Filed 3/9/22  Michajlenko v. Terramar Retail Centers CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


| | |
|---|---|
| OLEG MICHAJLENKO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>TERRAMAR RETAIL CENTERS LLC et al.,<br><br>Defendants and Respondents. | D077539<br><br><br>(Super. Ct. No. 37-2017-00032406-CU-PO-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Fitzpatrick Law and Robert J. Fitzpatrick for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker, John R. Clifford and Kelly A. Van Nort for Defendants and Respondents.


## I.
## INTRODUCTION

Oleg Michajlenko filed a first amended complaint against defendants Terramar Retail Centers LLC (Terramar) and Seaport Village Operating Company LLC alleging that he "was seriously injured when he tripped

and . . . fell," on property owned and/or managed by defendants. Michajlenko brought negligence and premises liability causes of action against both defendants.[1]

Defendants filed a motion for summary judgment in which they argued that Michajlenko would be unable to establish either: (1) the existence of a dangerous condition on their property, or (2) that they had actual or constructive notice of any such condition, as would be required for Michajlenko to prove his claims. The trial court granted defendants' motion for summary judgment.

On appeal, Michajlenko claims that the trial court erred in granting defendants' motion for summary judgment. We affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *The operative complaint*

In January 2018, Michajlenko filed the operative first amended complaint against defendants. In a section of the complaint titled "General Allegations,"[2] (some capitalization omitted) Michajlenko alleged that defendants owned and/or managed property called, "The Headquarters at Seaport Village" (the "Premises" or "The Headquarters"). Michajlenko further alleged that he "was seriously injured when he tripped and . . . fell" in the parking lot of The Headquarters. According to Michajlenko, his fall "resulted in serious personal injuries . . . including but not limited to

---

[1]    Michajlenko's wife filed a loss of consortium cause of action against defendants. However, she dismissed her cause of action in the trial court and is not a party to this appeal.

[2]    Michajlenko incorporated all of the general allegations from the operative complaint into the negligence and premises liability causes of action.

2

traumatic brain injury, serious orthopedic injuries, soft tissue injuries, and substantial pain and suffering, for which he continues treatment . . . ."

Michajlenko maintained that "the Premises were in a dangerous condition, which caused the trip and fall" and specified that this dangerous condition consisted of the following:

> "The Premises were undergoing maintenance or improvements at the time of the [i]ncident and the pedestrian pathway running [n]orth/[s]outh into the retail and restaurant establishments was closed off by yellow tape running along the entirety of both sides of the pedestrian pathway. This closure forced Mr. Michajlenko to take an alternate route from the restaurants through the parking area. That route was not safe for pedestrians. Forced to walk outside of the pedestrian pathway due to the obstructions, Mr. Michajlenko tripped over a vehicle wheel stop, which was difficult to see because of darkness, its color, and other obstructions. The wheel stop was especially difficult to see in the darkness because it was painted the same color blue as the painted lines outlining the disabled parking spaces."

In a negligence cause of action, Michajlenko stated that defendants owed him a duty of care to use reasonable care to prevent harm. Michajlenko further alleged:

> "Defendants created the dangerous condition at the Premises or allowed the Premises to remain in a dangerous condition despite their knowledge of the dangerous condition. Defendants failed to warn others of the dangerous condition and the condition was not obviously unsafe. Defendants created the condition at the Premises, knew of the condition, and failed to warn of the dangerous condition in spite of the fact that a reasonably careful person in the same situation would not have created the dangerous condition, and if known, would have corrected it or adequately warned others of the dangerous condition."

3

Michajlenko alleged that the defendants' breach of their duty caused him to suffer injuries.

In a premises liability cause of action, Michajlenko alleged that defendants had a duty to use reasonable care to keep the Premises in a reasonably safe condition. Michajlenko maintained that the defendants breached this duty as follows:

> "The Premises were in a dangerous condition because, among other things, the Premises were undergoing maintenance or a work of improvement and [d]efendants set up barriers that impeded a safe pedestrian route. This forced [Michajlenko] to take an alternative route, which was unsafe due to parking wheel stops, curbs and other obstructions in a poorly lighted area."

Michajlenko contended that the unsafe condition of the Premises created an unreasonable risk of harm and caused him to suffer injuries.

B. *Defendants' motion for summary judgment and/or summary adjudication*

Defendants filed a motion for summary judgment, or in the alternative, summary adjudication. In a brief in support of their motion, defendants noted that in order to prevail on either a negligence cause of action or a premises liability cause of action, Michajlenko was required to prove both that the Premises contained a dangerous condition and that the defendants knew or should have known about the condition. Defendants argued that Michajlenko would not be able to establish either fact.

First, defendants argued that the undisputed material facts established that the wheel stop over which Michajlenko tripped did not constitute a dangerous condition because:

> "The wheel stop was placed wholly within the accessible parking stall.

4

"The parking space was compliant with [the Americans with Disabilities Act] Accessibility Guidelines and local Building Codes.

"The dimensions and placement of the subject wheel stop were safe and compliant with [the Americans with Disabilities Act] Accessibility Guidelines and local Building Codes.

"The wheel stop was painted blue in contrast with the surrounding pavement and walkway.

"The wheel stop was located in an area that was very well lit and exceeded lighting recommendations for parking lots and emergency egress.

"The wheel stop complied with local industry customs and practices, because it was in a brightly lit area and was painted blue.

"The wheel stop was clearly visible." (Formatting omitted.)

Defendants also maintained that Michajlenko would not be able to present any evidence that defendants knew or should have known that the wheel stop might constitute a dangerous condition. In support of this contention, defendants noted that Terramar personnel were on site daily to observe the Premises, and that, "[a]lthough records were kept since the property opened in 2013, there [were] no other reports of any prior trip and fall, injury or other incident involving the subject wheel stop."

Defendants also argued that there was no evidence that Michajlenko had been "forced to encounter the wheel stop," noting that "[a]lthough the middle walkway was cordoned off with yellow caution tape [on the night of the incident], the sidewalks and rest of the parking lot were accessible and there were multiple alternate routes to access all areas of the parking lot."

5

Defendants supported their motion with a declaration from Carl Beels, a human factors and safety expert. In his declaration, Beels stated that the parking space in which the incident occurred was compliant with the Americans with Disabilities Act Accessibility Guidelines and local building codes. Beels also observed that the "lighting at the subject area was more than four times what is required or recommended for parking lots." With respect to the wheel stop, Beels stated that it "was contained completely within the accessible parking space," and that its "dimensions and placement . . . were safe and compliant with [the Americans with Disabilities Act] Accessibility Guidelines and local Building Codes." According to Beels, the wheel stop also complied with local industry customs and practice in that "it was brightly lit and painted blue in contrast with the surrounding pavement and walkway."

Defendants also lodged a declaration from Terry Hall, the former general manager of The Headquarters. Hall stated that The Headquarters maintained records of falls and injuries occurring on the Premises and that those records did not contain any prior reports of any incidents involving the wheel stop at issue in this case.

Hall described the condition of the parking lot of the Premises at the time of the incident as follows:

> "Terramar . . . hired Shariden Design Asphalt Inc. to recoat the walkway located in middle of the parking lot at The Headquarters. As part of its work, Shariden Design Asphalt Inc. cordoned off a walkway with yellow caution tape. Although the middle walkway was cordoned off with yellow caution tape on January 3, 2017, the sidewalks and rest of the parking lot were accessible."

Defendants also lodged excerpts of Michajlenko's deposition testimony and excerpts of the deposition testimonies of several of his family members

6

who were with him on the night of his fall. Michajlenko and his family members acknowledged that, on the night of the incident, The Headquarters's parking lot lights were on and appeared to be working.

C. *Michajlenko's opposition*

Michajlenko filed an opposition to the defendants' motion. In his opposition, Michajlenko argued that "Defendants created an obstacle course, which 78[-]year-old [p]laintiff could not negotiate." In support of this contention, Michajlenko argued that, "[o]n the evening of the trip and fall, the pedestrian walkway was taped-off in its entirety with caution tape preventing its use and blocking the path to the restaurants at [T]he Headquarters." Michajlenko further stated that Terramar personnel were responsible for taping off the walkway and that Hall had observed the taped-off walkway.

Michajlenko also maintained that Terramar's agent, a security guard, had contributed to the creation of a dangerous condition, arguing in part:

> "[A]s [Michajlenko] and his family approached the pedestrian walkway from their vehicle,[3] a Terramar security person, (an agent of Terramar) [citation], instructed [Michajlenko] and his family to lift the tape, walk under it, and cross the walkway perpendicularly to get to the other side so that they could get to and from the restaurants. [Citation.] To do this, they were required to lift the caution tape above their heads while navigating a maze of vehicle wheel[ ]stops under their feet. [Citation.]
>
> "Upon their return to their parked vehicle, [Michajlenko] lifted the tape to cross under it (as the Terramar security person suggested), and immediately upon doing so, his foot contacted a wheel stop, which he did not see, causing him

---

3    Michajlenko's statement of undisputed facts states, "[Michajlenko] and his family parked in the parking lot adjacent to The Headquarters at Seaport Village to go to a restaurant [at The Headquarters]."

to trip and fall. [Citation.] The taped-off pedestrian walkway alone, and combined with Terramar's suggestion to go under the tape, at night, was negligent and created a dangerous condition. That is, [d]efendants prevented [Michajlenko] from taking the pedestrian walkway to his vehicle; forced [Michajlenko] to take an unsafe route laden with tripping hazards; and also forced [Michajlenko] to focus on lifting the tape while tripping hazards (wheel[ ]stops) existed under his feet. Moreover, this accident happened at night when visibility was restricted. [Citations.]"

Michajlenko contended that, "Terramar breached . . . its duty and created the dangerous condition by: (1) taping off and blocking the pedestrian walkway (which had been constructed to prevent tripping); (2) failing to mitigate that problem, by for example, providing an alternative route to the restaurants; and (3) instructing [Michajlenko] to lift the tape to cross perpendicularly, which created a more dangerous situation in light of the fact that wheel[ ]stops were located under and around the caution tape."

Michajlenko maintained that defendants created a dangerous condition that was not open and obvious because "[t]he wheel[ ]stops were positioned immediately under the caution tape that [Michajlenko] was required to go under." In the alternative, Michajlenko argued that even if the danger posed by the wheel stop/caution-tape configuration was "open and obvious," the defendants had a duty to mitigate the danger because he was "compelled to take the dangerous, obstacle-laden path that Terramar created." Michajlenko further contended that the defendants had actual notice of the dangerous condition because Hall had stated in her deposition that she had seen the taped-off walkway on the day of the incident. Michajlenko argued in the alternative that notice of the dangerous condition could be imputed to the

8

defendants because a jury could infer that the defendants had taped off the walkway.[4]

Michajlenko supported his opposition with excerpts of his deposition testimony and Hall's deposition testimony.

D. *Defendants' reply*

In their reply, defendants contended that Michajlenko had improperly "changed his theory of liability from what was alleged in the pleadings." Specifically, defendants argued that "[n]owhere in the pleading does [Michajlenko] assert that a dangerous condition was caused by the wheel stop intruding into the walkway or that an unidentified person told him he could utilize the closed walkway." Defendants also reiterated their arguments that the wheel stop was open and obvious, the caution tape served as notice that the walkway was closed, and that there were multiple alternative routes to access The Headquarters that did not involve the closed walkway.

Defendants lodged additional deposition excerpts with their reply. Together with the deposition excerpts, defendants lodged various exhibits, including photographs of the walkway and wheel stop at issue, as well as an aerial photograph of The Headquarters and its parking lot and the adjacent Seaport Village parking lot in which Michajlenko's family parked their car on the night of the incident.

E. *The trial court's order granting summary judgment*

After a hearing, the trial court granted defendants' motion for summary judgment.

---

[4] Michajlenko noted that Hall stated during her deposition that she could not recall who had taped off the pedestrian walkway on the day of the incident, but that ordinarily, her office would be responsible for instructing security personnel to tape off an area that needed to be barricaded.

9

In a minute order granting the motion, the trial court began by providing a summary of the court's understanding of Michajlenko's allegations, stating, "[Michajlenko] . . . tripped over a wheel stop that is located within a parking space, which was painted blue. [Michajlenko] asserts that he tripped over the wheel stop because he was forced to cross under caution tape that was surrounding a walkway."

Next, the trial court concluded that there was a factual dispute with respect to whether the wheel stop was an "open and obvious" danger. The trial court reasoned:

> "Defendants . . . assert that the wheel stop, which is 8 inches wide, 5 inches high and 4 feet in length, was open and obvious. '[L]andowners have no duty to warn of open and obvious dangers on their property because such dangers serve as warnings themselves.' [Citation.] [Michajlenko[5]] dispute[s] that the wheel stop was open and obvious, citing the deposition of [Michajlenko]. [Michajlenko] testified that '[l]ate at night in the dark [he] could not distinguish between the lines on the ground and the painted wheel stopper.' [Citation.] There is a factual dispute as to whether the wheel stopper was open and obvious under the circumstances."

However, the trial court concluded that defendants had demonstrated that Michajlenko could not establish that defendants had "actual or constructive notice that the wheel stop was a dangerous condition." The court reasoned:

> "It is undisputed that Terramar maintained records of all reported incidents and injuries occurring at the premises and there are no reports of a trip and fall involving the

<hr />

5    While the trial court's minute order refers to "*plaintiffs'*" opposition to defendants' motion for summary judgment, Michajlenko filed the only opposition contained in the record. (Italics added.) We have edited the minute order accordingly.

wheel stop. [Citation.] It is undisputed that no lights were burned out at the time of the incident. [Citation.] Finally, it is undisputed that the wheel stop and lighting complied with regulations and industry customs and practices. [Citation.] [Michajlenko] attempts to dispute the facts by citing to his own deposition testimony that he could not distinguish between the lines on the ground and the painted wheel stop[ ]. In contrast, [Michajlenko's wife] testified that they did not have any difficulty seeing as they walked through the parking lot. [Citation.] [Michajlenko's] daughter-in-law . . . testified there was not anything that obstructed the blue curb stops, in terms of them being visible. [Citation.] While [Michajlenko] point[s] to [Hall's] testimony that she saw the taped-off walkway, Ms. Hall stated she observed it in the day, not at night. [Michajlenko's] theory of a dangerous condition is dependent on the difficulty in seeing the wheel stop. [Michajlenko] has not raised an issue of fact that [d]efendants were aware of the difficulty of seeing the wheel stop."

The trial court further concluded that there was not a triable issue of material fact with respect to whether knowledge of the dangerous condition should be imputed to defendants on the ground that they had created the dangerous condition. The court reasoned:

"[Michajlenko] attempt[s] to overcome the issue of knowledge by citing to law that indicates landowners may be imputed with knowledge of a dangerous condition when the premises were under the exclusive control of the landowner. (See *Getchell v. Rogers Jewelry* (2012) 203 Cal.App.4th 381, 386 ['the break room where the accident occurred and the cleaning solution which caused the accident were under the exclusive control of defendant and its employees. . . . [I]t reasonably could be inferred that defendant's employees caused the dangerous condition.'] Here, it is undisputed that [d]efendants had control of the premises and that the middle walkway of the parking lot was cordoned off with yellow caution tape. However, [Michajlenko] [has] not raised an issue of fact

11

that [d]efendants created the condition by forcing [Michajlenko] to cross under the caution tape.

"While [d]efendants may have created the condition of a wheel stop being under caution tape, this is not a condition that invited pedestrians to approach it and cross under. Plaintiffs could have followed a different path, rather than go under the caution tape. To dispute [d]efendants' evidence that the sidewalks and rest of the parking lot were accessible and there were multiple alternate routes to access all areas of the parking lot, [Michajlenko] cites Ms. Hall's testimony. [Citation.] Ms. Hall did not testify that there were no other safe alternate routes. Rather, she testified that there were several other routes. [Citation.] Because [p]laintiffs had other options to access the parking lot, [d]efendants did not create a dangerous condition where [p]laintiffs were forced to go under caution tape at the location of the incident. It was [Michajlenko] who decided to go under the caution tape where he did."

The trial court further rejected Michajlenko's contention that defendants were aware of a dangerous condition on the Premises based on evidence of a statement alleged to have been made by a security guard. The trial court reasoned:

"[Michajlenko] also argue[s] Defendants were aware of the dangerous condition because a security guard instructed [Michajlenko] to lift the caution tape. The cited testimony does not support this argument. [Michajlenko] testified that he lifted up the caution tape because he did not want to walk into it. [Citation.] [Michajlenko] further testified that on the way to the restaurant an individual had told them '[y]ou can go this way and go to the restaurant,' that they did so, and that he fell when they tried to take the same path back. [Citation.] [Michajlenko] also testified that he 'asked the attendants if we could cross over because we needed to. He indicated yes.' [Citation.] [Michajlenko does] not cite any testimony that an individual instructed them to go under the caution tape where the incident actually happened rather than take an

12

alternate route.  Further, the testimony of Ms. Hall, cited
to by [Michajlenko], discusses that service providers were
expected to keep their eyes out for safety issues.  Ms. Hall
does not state a security guard instructed Plaintiffs."

The trial court ultimately concluded that Michajlenko had "not raised an issue of fact as to whether [d]efendants had knowledge of or created a dangerous condition," and granted defendants' motion for summary judgment.

F.  *The judgment*

The trial court entered a judgment in favor of defendants in January 2020.

G.  *The appeal*

Michajlenko timely appeals from the judgment.

### III.

### DISCUSSION

*The trial court properly granted defendants' motion for summary judgment*

Michajlenko claims that the trial court erred in granting defendants' motion for summary judgment.

A.  *Governing law*

1.  *The law governing summary judgment*

A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of all of his causes of action, or that the defendant has a complete defense to each cause of action.  (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

In reviewing a trial court's ruling on a motion for summary judgment, the reviewing court makes " 'an independent assessment of the correctness of

13

the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' " (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.)

"We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493–494 (*Hutton*).)

2. *Relevant substantive law*

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.)

With respect to a store owner's duty of care in this context, the Supreme Court has explained, "It is well established in California that although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).)

"[L]andowners have no duty to warn of open and obvious dangers on their property because such dangers serve as warnings themselves." (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1207–1208; see also *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 447 (*Jacobs*)

14

[" 'Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition' "].)[6]

In addition, "because the owner is not the insurer of the visitor's personal safety [citation], the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability. Although the owner's lack of knowledge is not a defense, '[t]o impose liability for injuries suffered by an invitee due to [a] defective condition of the premises, the owner or occupier "must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. . . ." ' " (*Ortega, supra,* 26 Cal.4th at p. 1206.)

Constructive notice of a dangerous condition may be established by evidence supporting " 'a reasonable inference . . . that the condition was created by employees of the [defendant] . . . .' " (*Getchell v. Rogers Jewelry, supra,* 203 Cal.App.4th at p. 385 (*Getchell*).)[7]

B. *Application*

Michajlenko contends that the trial court erred in granting summary judgment. He argues that the record contains evidence demonstrating a triable factual dispute with respect to whether the defendants had a duty to

---

[6] As we explain in part III.B.3, *post*, notwithstanding the obviousness of a danger, a landowner has a duty to remedy a dangerous condition where necessity requires a person coming onto the property to encounter the danger.

[7] We assume for purposes of this decision that the case law discussed in this section applies equally to landowners' agents, including those entities managing the owners' property.

warn him of a dangerous condition in the parking lot of the Premises that was not open and obvious. Michajlenko also maintains that there is a triable issue of material fact with respect to whether the defendants had actual or constructive knowledge of such condition. Finally, he argues that, even assuming that the danger on the Premises was open and obvious, the defendants had a duty to remedy the danger because "necessity" required that he encounter the danger.

1. *Defendants established that any danger presented by the wheel stop/cordoned off pedestrian walkway was open and obvious as a matter of law and that they therefore had no duty to warn of such condition*

   a. *Michajlenko's contention*

In his brief on appeal, Michajlenko argues in relevant part:

> "Genuine issues of material fact exist as to whether [the] condition of the property was open and obvious considering the configuration of the taped-off pedestrian walkway, the wheel[ ]stops underneath the tape and *Terramar's instruction to go underneath the tape to cross the walkway*. . . . [T]he walkway was closed with caution tape. *[Michajlenko] was instructed to*, and did, lift the caution tape to cross the closed walkway. The problem is that wheel stops were located under the caution tape, *forcing [Michajlenko] to lift the tape*, duck under, and also navigate through a maze of wheel[ ]stops at night. Had Defendants offered another route without obstructions, or had they not blocked the pedestrian walkway, this accident would not have happened. Defendants breached their duty to provide a safe walkway. Instead, they created an unsafe obstacle course." (Italics added.)

b. *The operative complaint did not allege any theory of liability premised on the defendants' agent having instructed Michajlenko to lift the caution tape and cross the cordoned off pedestrian walkway; defendants were therefore not required to address this theory in their motion for summary judgment*

We begin our analysis of Michajlenko's contention by "identify[ing] the issues framed by the pleadings since it is these allegations to which the motion must respond." (*Hutton, supra*, 213 Cal.App.4th at p. 493.) As the court in *Jacobs* explained:

> "The pleadings play a key role in a summary judgment motion and ' " 'set the boundaries of the issues to be resolved at summary judgment.' " ' [Citation.] '[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings. [Citation.] A moving party seeking summary judgment or adjudication is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion. [Citation.]' [Citation]; see *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ['[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings,' and '[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings'].)" (*Jacobs, supra*, 14 Cal.App.5th at p. 444.)[8]

---

[8] Defendants argued, both in the trial court and in their respondents' brief on appeal, that Michajlenko had not pled any theory of liability premised on defendants' agent having instructed him to lift the caution tape and cross the pedestrian walkway.

While this appeal was pending, we requested that the parties file supplemental briefs "[a]pplying *Jacobs* and the law governing pleadings in the context of summary judgment motions," with respect to the following questions:

17

In *Jacobs*, the plaintiffs, a husband and wife, sued a real estate company for negligence and loss of consortium. (*Jacobs, supra*, 14 Cal.App.5th at pp. 440–441.) The defendant had marketed a vacant property that had a swimming pool with a diving board. (*Id.* at p. 440.) While the plaintiffs were viewing the property as potential buyers, the husband stepped onto the diving board to look over a fence. (*Id.* at pp. 440–441.) The diving board collapsed, and the husband fell into the empty pool. (*Id.* at p. 441.)

The defendant moved for summary judgment on several grounds, including that there was no evidence that it had actual or constructive notice of the allegedly dangerous condition of the diving board. (*Jacobs, supra*, 14 Cal.App.5th at p. 442.) After plaintiffs argued in their written opposition to defendant's summary judgment motion that defendant had failed to respond to plaintiffs' purported " 'allegations that the empty swimming pool was a dangerous condition' " (*ibid.*), defendant argued that plaintiffs could not defeat summary judgment with an unpled theory of liability. (*Id.* at

---

> "Does a fair reading of the operative complaint in this case demonstrate that [Michajlenko] alleged that defendants' agent 'instruct[ed] [Michajlenko] to lift the tape to cross perpendicularly,' as [Michajlenko] argued in his opposition to defendants' motion for summary judgment?
>
> "May the trial court's granting of summary judgment be affirmed on the ground that defendants demonstrated as a matter of law that [Michajlenko] could not prevail on the claims that [Michajlenko] *did* allege in the operative complaint?"

The parties complied with our request and we have considered their supplemental briefs in resolving this appeal.

p. 443.)  In granting summary judgment, the trial court concluded that the plaintiffs had not alleged the "empty pool theory of liability."  (*Ibid*.)

On appeal, the *Jacobs* court concluded that the trial court had properly determined that plaintiffs "failed to plead the empty pool theory of liability in their complaint."  (*Jacobs, supra*, 14 Cal.App.5th at p. 443, capitalization & italics omitted.)  The *Jacobs* court reasoned in part:

> "Here, a fair reading of the complaint's allegations does not suggest a negligence claim based on the condition of the empty pool as opposed to the condition of the diving board. A defendant (or a court) reading the complaint would not reasonably anticipate such a claim and, therefore, would not have understood that a motion for summary judgment would need to address the claim.  The allegedly defective condition of the diving board is the only theory stated in the complaint.  There are additional general allegations of negligence with respect to the failure to maintain and control the property, but the only specific mention of negligence relates to [defendant's] alleged 'fail[ure] to take measures to make the area where Plaintiff fell reasonably safe, repair the diving board and all accompanying attachments, protect Plaintiff from the diving board, remove the diving board, and fail[ure] to warn Plaintiff that the diving board and all accompanying attachments were in poor condition.'  The complaint did not mention the pool except to state that 'Plaintiff . . . was lawfully and foreseeably on an outdoor diving board on said premises when the attachments connecting the diving board to the ground broke off causing the board, and Plaintiff, to fall into a nearby empty pool.'  There is no mention, suggestion, or any facts alleged that would put a reasonable defendant on notice that plaintiffs were claiming that [defendant] was negligent with respect to the empty pool.  Thus, [defendant's] motion for summary judgment did not need to address that claim.  (See *Hutton*[, *supra*, 213 Cal.App.4th at p. 499] ['[d]efendant . . . met its burden as the moving party when it negated the sole basis of plaintiff's claims,' and '[i]t was not incumbent on defendant to refute liability

19

on some theoretical possibilities not included in the pleadings'].)" (*Id.* at pp. 444–445.)

As noted in part II.A, *ante*, in the operative complaint, Michajlenko alleged:

> "The Premises were undergoing maintenance or improvements at the time of the [i]ncident and the pedestrian pathway running [n]orth/[s]outh into the retail and restaurant establishments was closed off by yellow tape running along the entirety of both sides of the pedestrian pathway. This closure forced Mr. Michajlenko to take an alternate route from the restaurants through the parking area. That route was not safe for pedestrians. Forced to walk outside of the pedestrian pathway due to the obstructions, Mr. Michajlenko tripped over a vehicle wheel stop, which was difficult to see because of darkness, its color, and other obstructions. The wheel stop was especially difficult to see in the darkness because it was painted the same color blue as the painted lines outlining the disabled parking spaces."

Absent from Michajlenko's complaint are *any* allegations of *any* acts committed by defendants' agent, much less an allegation that the defendants' agent instructed Michajlenko to lift the yellow caution tape to cross the cordoned off pedestrian walkway. Thus, "[t]here is no mention, suggestion, or any facts alleged that would put . . . reasonable defendant[s] on notice that [Michajlenko was] claiming that [defendants were] negligent" (*Jacobs, supra*, 14 Cal.App.5th at p. 445) based on the purported acts of their agent in instructing Michajlenko to lift the yellow caution tape to cross the pedestrian walkway. Accordingly, as the *Jacobs* court concluded with respect to the "empty pool theory of liability" in that case (*id.* at p. 443), defendants' motion for summary judgment "did not need to address" (*id.* at p. 444) Michajlenko's

20

contention that defendants' created a dangerous condition by instructing him to lift the yellow tape and cross the pedestrian walkway.[9]

We also reject Michajlenko's contention that defendants were obligated to address the theory that one of the defendants' agents instructed him to lift the yellow tape because this theory of liability was disclosed in discovery. Michajlenko argues that "[a]n important caveat of the rule discussed in *Jacobs*, is that discovery can *expand* and clarify the scope of the pleadings." (Citing *Jacobs, supra*, 14 Cal.App.5th at p. 445, italics added.)

The *Jacobs* court did *not* state that discovery can *expand* the theories of liability in the pleadings. On the contrary, the Jacobs court stated that discovery can clarify and *narrow* the scope of the pleadings:

> "Finally, if plaintiffs' complaint left any doubt that their claims were based on the allegedly defective diving board, and not on the condition of the empty pool, their interrogatory responses removed that doubt. (See *Burke v. Superior Court* (1969) 71 Cal.2d 276, 281 [interrogatories 'used to clarify the contentions of the parties . . . are an adjunct to the pleadings' and should be used liberally "for the purpose of clarifying and *narrowing* the issues made by the pleadings"].) Plaintiffs' responses to [defendant's] contention interrogatories make no mention of the empty pool theory of liability." (*Jacobs, supra*, 14 Cal.App.5th at p. 445, italics added.)

Thus, in *Jacobs*, the court stated that, even assuming the plaintiffs' complaint in that case could be read to have raised the empty pool theory of liability,[10] the defendants were *not* required to address that theory of

---

[9] Defendants did *not*, in fact, address this theory of liability in their motion for summary judgment. (See II.B, *ante*.)

[10] As noted *ante*, the *Jacobs* court commented that the plaintiffs' complaint expressly stated that one of the plaintiffs had fallen into an empty

21

liability in moving for summary judgment because the plaintiffs' interrogatory responses "removed [any] doubt," as to whether plaintiffs were relying on the empty pool theory of liability. (*Jacobs, supra*, 14 Cal.App.5th at p. 445.) Thus, while *Jacobs* stands for the proposition that discovery responses may *narrow* a defendant's burden with respect to the theories of liability it must address in moving for summary judgment, *Jacobs* does not support the proposition that discovery responses can *expand* the issues that a defendant must address.

Jacobs is therefore of no assistance to Michajlenko. First, while the complaint in *Jacobs* expressly stated that one of the plaintiffs had fallen into an empty pool and thus was arguably ambiguous with respect to whether plaintiffs were relying on an "empty pool theory of liability" (*Jacobs, supra*, 14 Cal.App.5th at p. 445), Michajlenko's complaint makes *no* reference to a security guard having instructed him to go under the yellow tape and contains *no* allegations even arguably placing the defendants on notice that Michajlenko was claiming that defendants were negligent based on a "theory of liability" premised on a security guard's instructions. (*Ibid.*) Further, there is nothing in *Jacobs* that suggests that a plaintiff may oppose a motion for summary judgment based on an entirely new theory of liability that is not disclosed in the plaintiffs' complaint merely because the theory of liability is alluded to in discovery.

In addition, Michajlenko does not cite *any* case that supports the proposition that discovery can *expand* the theories of liability, a contention

---

pool. (See *Jacobs, supra*, 14 Cal.App.5th at p. 444 [noting that complaint stated, " 'Plaintiff . . . was lawfully and foreseeably on an outdoor diving board on said premises when the attachments connecting the diving board to the ground broke off causing the board, and Plaintiff, to fall into a nearby empty pool' "].)

that is contrary to well established case law discussing the distinct roles that pleadings and discovery play in the summary judgment context:

> " 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues:  the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings.'  [Citations.]  The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action.  [Citation.]" (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 380.)

Accordingly, we conclude that defendants were not required to address Michajlenko's theory that one of the defendants' agents instructed him to lift yellow tape and cross under the cordoned off pedestrian walkway, and further conclude that Michajlenko may not avoid summary judgment by relying on that theory.

> c.  *Defendants demonstrated, as a matter of law, that any danger presented by the wheel stop and cordoned off pedestrian walkway was open and obvious and that they therefore did not owe Michajlenko any duty to warn of the condition*

With respect to the theory of liability that *was* alleged in Michajlenko's complaint, defendants demonstrated the absence of a triable issue of material fact with respect to whether any danger presented by the wheel stop and cordoned off pedestrian walkway was open and obvious and thus, whether they owed Michajlenko any duty to warn of the condition.

As quoted in part II.A, *ante*, the operative complaint alleged that defendants' act of cordoning off the pedestrian walkway forced Michajlenko to take a path from the restaurant in which he encountered a wheel stop. Michajlenko further alleged that he tripped over the wheel stop because it was "difficult to see [due to] darkness, . . . color, and other obstructions."

23

In determining whether defendants demonstrated that any danger posed by the wheel stop and cordoned off pedestrian walkway was open and obvious as a matter of law, we begin by observing that, as described in part II.B, *ante*, defendants offered a declaration from a human factors and safety expert, Carl Beels, concerning the condition of the parking lot, including the wheel stop over which Michajlenko tripped. Beels stated that the parking space in which the incident occurred was compliant with the Americans with Disabilities Act Accessibility Guidelines and local building codes. As to the wheel stop, Beels stated that its "dimensions and placement . . . were safe and compliant with [the Americans with Disabilities Act] Accessibility Guidelines and local Building Codes," and complied with local industry customs and practice in that the wheel stop "was brightly lit and painted blue in contrast with the surrounding pavement and walkway."

Instead of offering "a competent expert declaration to the contrary" (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761–762), Michajlenko simply asserted that he "did not see the wheel[ ]stop," without presenting any evidence that his failure to see the wheel stop was due to poor lighting or other obstructions that might have constituted a dangerous condition.

With respect to lighting, Michajlenko's family members testified that visibility was *not* a problem on the night of the incident. Michajlenko himself testified that the "lights were on," in the parking lot. Michajlenko also stated that he did not observe any lights in the parking lot that were burned out. In addition, during his deposition, Michajlenko was asked, "Have you heard from any source whatsoever that there were any lights out in the parking lot that night?" Michajlenko responded, "No." Further, Beels stated in his declaration that the "lighting at the subject area was more than four times

24

what is required or recommended for parking lots." Michajlenko presented no contrary evidence.

With respect to obstructions, defendants presented undisputed evidence that "[t]here were no cars parked in the accessible space [where the wheel stop at issue was located] and the parking lot was quite empty at the time of Mr. Michajlenko's fall." Michajlenko's son, who was present at the time of the incident, was asked during his deposition, "[Was] there anything that would have obstructed [Michajlenko's] view from seeing the wheel stop as you were walking through that parking lot?" He responded, "No." Further, apart from the yellow caution tape, which we address below, Michajlenko did not identify evidence of any other obstructions that could have made the wheel stop difficult to see.

With respect to the yellow caution tape, as defendants persuasively argue on appeal, "the yellow caution tape served as obvious notice the walkway was closed." (Capitalization omitted.) Michajlenko does not present any argument to the contrary. Instead, Michajlenko argues that the "configuration" of the wheel stop and the caution tape presented a danger *to a person attempting to go under the tape*:

> "The wheel[ ]stops were positioned immediately under the caution tape that [Michajlenko] *was required to go under*. This configuration created a dangerous condition that was not obvious for [Michajlenko]. Indeed, [Michajlenko] testified he did not see the wheel[ ]stop *as he was lifting the tape*, which caused him to fall."[11] (Italics added.)

---

[11] The quotation is taken from Michajlenko's appellate brief at page 11. The same quotation appears on page 5 of Michajlenko's opposition to defendants' motion for summary judgment.

25

This argument is unpersuasive because there is no evidence in the record upon which a jury could find that the defendants' act in cordoning off the pedestrian walkway with caution tape "*forced* [Michajlenko] to navigate through caution tape and difficult-to-see wheel[ ]stops at night," as Michajlenko argues on appeal. (Italics added.) To begin with, as noted above, Michajlenko does not argue or point to any evidence suggesting that the yellow caution tape served as an invitation for pedestrians to attempt to cross under the tape. In addition, as the trial court properly noted, the defendants presented evidence "that the sidewalks and rest of the parking lot were accessible and there were multiple alternate routes to access all areas of the parking lot." For example, Michajlenko's son testified in his deposition as follows:

> "Q     And to your knowledge, was there anything that prevented you, if you didn't want to cross the security tape, from taking the sidewalk in a westerly direction to go out and come back in the parking lot where you brought the car in when you came and parked it?

> "A     No, there wouldn't have been."

Hall[12] also testified that there were other routes beyond the blocked off pedestrian walkway for patrons parking their cars in either The Headquarters parking lot or the adjacent Seaport Village parking lot to get to the shops at The Headquarters. Michajlenko points to no contrary evidence. In sum, there is no evidence in the record that would support a finding that the defendants' taping off of the walkway compelled Michajlenko to attempt to cross under the yellow caution tape. Thus, the trial court properly concluded, "Defendants did not create a dangerous condition where

---

12     As noted in part II.B, *ante*, Hall is the former general manager of The Headquarters.

[Michajlenko was] forced to go under caution tape at the location of the incident. It was [Michajlenko] who decided to go under the caution tape where he did."[13]

In light of the undisputed evidence recounted *ante*, we conclude that defendants demonstrated that any danger presented by the wheel stop / cordoned off pedestrian walkway was open and obvious as a matter of law. Therefore, we further conclude that defendants demonstrated the absence of a triable issue of material fact with respect to whether defendants breached their duty to warn Michajlenko of nonobvious dangers on their property.

2. *Defendants established that Michajlenko could not prove that defendants had actual or constructive notice of a dangerous condition on their property*

Michajlenko contends that the trial court erred in determining that defendants established that he could not prove that defendants had actual or constructive notice of a dangerous condition on their property.[14] Michajlenko offers two arguments in support of his contention. Neither is persuasive.

---

[13] As noted in part III.B.1.b, *ante*, defendants were not required to demonstrate an absence of a triable issue of material fact with respect to Michajlenko's unpled theory that one of the defendants' agents had instructed to lift the caution tape and Michajlenko could not avoid summary judgment by opposing the defendants' motion based on this unpled theory of liability.

[14] Our conclusion in part III.B.1, *ante*, that defendants established that any danger presented by the wheel stop and cordoned off pedestrian walkway was open and obvious makes it unnecessary to address this issue. However, we address the arguments that Michajlenko presents on appeal with respect to this issue in the interest of completeness because his arguments are intertwined with our conclusion that any danger presented by the wheel stop and cordoned off pedestrian walkway was open and obvious.

First, Michajlenko cites case law in which courts have concluded that, in instances in which a defendant creates a dangerous condition, knowledge of such condition is imputed to the defendant. (See *Getchell, supra*, 203 Cal.App.4th at p. 385.) Yet, the only "dangerous condition," of which Michajlenko contends there is evidence that the defendants created is the taping off of the pedestrian walkway.[15] However, for the reasons stated in part III.B.1, *ante*, the taping off of the pedestrian walkway did *not* create a dangerous condition for which the defendants had a duty to *warn*, and, for the reasons stated in part III.B.3, *post*, the defendants had no duty to *remedy* any allegedly dangerous condition caused by the taping off of the walkway.

Second, Michajlenko argues that the defendants had "actual notice of the unsafe condition," and cites Hall's deposition testimony that she saw the taped off walkway. Again, however, given our conclusion that the taping off of the pedestrian walkway did *not* create a dangerous condition for which defendants had a duty to warn or remedy, the fact that Hall had notice that the walkway had been taped off cannot serve as a basis for the defendants' liability.

Accordingly, we conclude that defendants established that Michajlenko could not prove that defendants had actual or constructive notice of a dangerous condition on their property.

3. *Michajlenko has not pointed to any evidence demonstrating that necessity required that he encounter a dangerous condition in the parking lot*

Michajlenko contends that, even assuming that the obviousness of the danger presented by the wheel stop and the cordoned off pedestrian walkway

---

[15] Michajlenko argues, "In light of the evidence suggesting Terramar caused the pedestrian walkway to be obstructed, a reasonable inference can be made that [d]efendants created the dangerous condition."

relieved defendants of their duty to *warn* of the danger, the defendants had a duty to *remedy* the danger. In support of this contention, Michajlenko cites case law in which courts have found that a landowner owed a plaintiff a duty to remedy a dangerous condition when *necessity* required the plaintiff to encounter the danger. (Citing *Martinez v. Chippewa Enterprises, Inc.* (2004) 121 Cal.App.4th 1179, 1184 and *Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104.) Michajlenko argues, "In our case, *necessity* did in fact require [Michajlenko] to encounter the dangerous condition." (Italics added.) Without citation to the record, Michajlenko asserts:

> "The pedestrian path to the restaurants was blocked, there was no sign or indication pointing to another path, and he was forced to negotiate obstacles to cross the path to get to the restaurants. Moreover, the Terramar security person instructed him to lift the tape and cross under. Thus, [Michajlenko] was compelled to take the dangerous, obstacle-laden path that Terramar created."

As noted in part III.B.1.c, *ante*, defendants offered undisputed evidence that there were multiple routes that Michajlenko could have taken to get from the restaurant to his family's car that would not have required him to attempt to cross the cordoned off pedestrian pathway. In addition, as noted in part III.B.1.b, *ante*, defendants were not required to address Michajlenko's unpled theory that a security person instructed him to lift the yellow tape and attempt to cross the cordoned off pedestrian path.

Accordingly, we conclude that Michajlenko has not identified any evidence from which a jury could reasonably find that necessity required that he encounter a dangerous condition in the parking lot. Thus, we further conclude that there is no triable issue of fact with respect to whether defendants breached their duty to remedy an allegedly dangerous condition in the parking lot.

29

IV.

DISPOSITION

The judgment is affirmed.  Michajlenko is to bear costs on appeal.


AARON, J.

WE CONCUR:

O'ROURKE, Acting P. J.

GUERRERO, J.