Filed 1/3/23  Farrington v. Rohlen CA5

## <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PETER D. FARRINGTON, et al.,<br><br>     Plaintiffs and Appellants,<br><br>          v.<br><br>BROOKS ROHLEN, et al.,<br><br>     Defendants and Respondents. | F082098<br><br>(Super. Ct. No. 18CECG02707) |
| PETER D. FARRINGTON,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER,<br><br>     Defendant and Respondent;<br><br>DON C. FARRINGTON,<br><br>     Intervener and Appellant. | **MODIFICATION OF OPINION ON DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]**<br><br>F082222<br><br>(Super. Ct. No. 18CECG02707) |

**THE COURT:**

It is ordered that the opinion herein filed on December 5, 2022, be modified as follows:

1. In the second sentence of the first full paragraph on page 9, insert the words" by Peter" between the words "claims" and "against."

2. On page 16, delete the three paragraphs that follow heading "IV. Issues regarding CCMC's judgment" and insert the following two paragraphs in their place:

"The court granted summary judgment for CCMC on all causes of action alleged against it, including on the ground that all causes of action by Peter against CCMC were barred by the one-year limitations period under Code of Civil Procedure section 340.5. Plaintiffs do not challenge the statute of limitations ruling in their opening brief.

"Moreover, plaintiffs' opening brief pertaining to CCMC's judgment begins: "This brief addresses the ostensible agency of two physicians in a hospital." Consistent with this opening line, plaintiffs' brief only addresses the issue of ostensible agency. Later in the introduction of the opening brief, plaintiffs state: "If this court reverses the summary judgments for Drs. Rohlen and Gill, ostensible agency is once again an issue, and the court should also reverse the summary judgment for Clovis hospital." This means the judgment entered in favor of CCMC can be reversed only if the judgment entered in favor of Rohlen and Gill is reversed. Since we are not reversing Rohlen's and Gill's judgment, the necessary condition plaintiffs place on reversing CCMC's judgment has not been satisfied. We therefore affirm CCMC's judgment."

This modification does not effect a change in the judgment.

The petition for rehearing is denied.


SNAUFFER, J.

WE CONCUR:


PEÑA, ACTING P. J.


MEEHAN, J.

2.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PETER D. FARRINGTON, et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>BROOKS ROHLEN, et al.,<br><br>Defendants and Respondents. | F082098<br><br>(Super. Ct. No. 18CECG02707)<br><br><br>**OPINION** |
| PETER D. FARRINGTON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER,<br><br>Defendant and Respondent;<br><br>DON C. FARRINGTON,<br><br>Intervener and Appellant. | F082222<br><br>(Super. Ct. No. 18CECG02707) |

APPEAL from judgments of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Peter D. Farrington and Don C. Farrington, in pro. per., for Plaintiffs and Appellants.

Don C. Farrington, in pro. per., for Intervener and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Michael F. Ball and Ryan D. Marshall, for Defendant and Respondent Brooks Rohlen.

Salinas Law Group, Richard S. Salinas and Stacy R. Lucas, for Defendant and Respondent Kuldeep Gill.

White │ Canepa and Karen J. Ray for Defendant and Respondent Fresno Community Hospital and Medical Center.

-ooOoo-

Patricia Farrington died at Clovis Community Medical Center on July 20, 2016, from thyroid cancer. Her husband, Peter Farrington, and her son, Don Farrington, filed a wrongful death action against Brooks Rohlen, M.D., Kuldeep Gill, M.D., and Fresno Community Hospital and Medical Center dba Clovis Community Medical Center ("CCMC"). Plaintiffs have represented themselves throughout this case. Plaintiffs have alleged causes of action for battery, fraud, and breach of contract against Rohlen, and for battery and fraud against Gill. Plaintiffs name CCMC as a defendant on all but the third cause of action, and plaintiffs allege CCMC is only vicariously liable.

Rohlen, Gill, and CCMC each moved separately for summary judgment on all causes of action alleged against them. The court heard Rohlen and Gill's motions together and granted both in a single order. The court entered a judgment for Rohlen and a judgment for Gill on the order granting the doctors' summary judgment motions. The court later heard and granted CCMC's motion and entered a judgment in its favor. Plaintiffs filed a notice of appeal from both the Rohlen and Gill judgments, and a second notice of appeal from the CCMC judgment.

The appeal from Rohlen and Gill's judgments was docketed in this court under case number F082098, and the appeal from CCMC's judgment was docketed in this court

2.

under case number F082222.  The two appellate cases were briefed separately.  After briefing was completed, we consolidated the two appellate cases on our own motion for purposes of opinion only.

On appeal, plaintiffs argue the trial court erred in granting the three motions for summary judgment.  We affirm all three judgments.

## FACTS

Every statement of fact in a brief must be supported by a citation to the record.  (Cal. Rules of Court, rule 8.204(a)(1)(C).)[1]  Stating facts without a record cite violates this rule.  When a litigant repeatedly provides no page citations to the record, the rule violation is "egregious[]," significantly burdening the opposing party and the court.  (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 166—167.)  It is the appellant's "duty to point out portions of the record that support the position taken on appeal."  (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)  "The appellate court is not required to search the record on its own seeking error."  (*Ibid.*)

When a brief fails to refer to the record in connection with the points raised on appeal, the appellate court may treat those points as having been waived.  (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239; see also *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799–801 [several contentions waived because the appellant failed to provide record citations showing that he had raised those issues in the trial court].)  The appellate court may also ignore unsupported contentions or strike portions of the brief entirely.  (*Dominguez v. Financial Indemnity Co.* (2010) 183 Cal.App.4th 388, 392, fn. 2 (*Dominguez*).)

The overwhelming majority of the factual assertions in plaintiffs' opening brief in the Rohlen and Gill appeal lack record cites, a serious violation of rule 8.204(a)(1)(C).  Plaintiffs also do not summarize the operative complaint, the summary judgment

---

[1] Undesignated references to rules are to the Rules of Court.

proceedings, or the court's lengthy ruling granting summary judgment for Gill and Rohlen. (Rule 8.204(a)(2)(C) [appellant's opening brief must provide a procedural history of the case and a "summary of the significant facts"].) "[T]his court is 'not required to make an independent, unassisted study of the record in search of error[.] We are entitled to the assistance of counsel.' " (*Yazdi v. Dental Board of California* (2020) 57 Cal.App.5th 25, 36 (*Yazdi*).)

The opening brief in the CCMC appeal is not any better. Many of the factual assertions there also lack record cites, but worse is that the summary of facts section is less than a full page. (*Yazdi, supra,* 57 Cal.App.5th at p. 36.) The substantive portion of the brief—from the introduction to the end of the brief—spans only four pages.

Despite these serious deficiencies, we will summarize the facts relevant to our disposition of these appeals without plaintiffs' assistance, though we are not required to. (*Yazdi, supra,* 57 Cal.App.5th at p. 36.).

## I.     Background facts

Patricia[2] was diagnosed with thyroid cancer in early 2016 and began treatment. On July 18, 2016,[3] in the early morning hours, she presented to the CCMC emergency department with hemoptysis (coughing up blood). She reported she had finished a round of chemotherapy and radiation a few days prior. While in the emergency department, Patricia had an episode of gagging and coughing up blood-colored sputum with small clots. Her oxygen saturation decreased to 86 percent and her heart rate increased. Since it was unclear where the blood was coming from, the decision was made to admit her to the floor.

---

[2] To avoid confusion, we will refer to the Farringtons by their first names only. We intend no disrespect.

[3] All references to dates are to dates in 2016 unless otherwise stated.

Patricia was admitted to the stepdown unit later that night (July 18). That day, Peter signed CCMC's "Conditions of Admission or Service" form on Patricia's behalf. The form explicitly stated all physicians were independent contractors and not employees or agents of the hospital.

On the morning of July 19, Patricia desaturated and was transferred to the intensive care unit. Her oxygen saturation decreased to between 87 and 89 percent. High-flow oxygen was increased to 40L and her oxygen saturation rose to 92 percent. Then, at 9:41 a.m., her oxygen saturation decreased again, this time to between 86 and 90 percent. The chest x-ray, which had initially been clear, now showed a questionable infiltrate at the right base and perhaps increased interstitial marking. There was concern she was aspirating blood. Her respiratory status continued to deteriorate and worsened to the point where she had to be bagged to maintain her oxygen saturation. The plan became to intubate Patricia.

Anesthesia was called to assist with the intubation because of the large size of the tumor in her throat and the scar tissue. Rohlen, an anesthesiologist, came to her bedside and found her to be in severe respiratory distress. Rohlen authored a note regarding his informed consent discussion with Patricia and Peter. He noted this was a challenging airway situation and that he discussed the ramifications of attempted intubation with Patricia and her family: that (1) unsuccessful intubation would likely result in death; (2) successful intubation would likely make her irreversibly ventilator dependent; and (3) she was not a candidate for emergent tracheotomy given the extent of tumor invasion and scar tissue. Rohlen noted Patricia and Peter agreed to proceed with intubation regardless of the risks and implications. Peter signed a consent form for these procedures: "bronchoscopy," "intubation," and a "possible emergent tracheostomy."

Anesthesia was started at 10:40 a.m. on July 19. Patricia was administered Propofol and was noted to be hemodynamically stable. Rohlen successfully intubated Patricia with a size 6 endotracheal tube. Patricia's vital signs were stable post-intubation,

5.

and her oxygen saturation increased to 99%. Even so, Patricia continued to be difficult to oxygenate, and her situation was discussed with her family.

On July 20, in the early morning hours, Gill, a pulmonologist and critical care specialist, was called by Patricia's nurse because Patricia was not saturating well despite being on 100% FIO2 on pressure mode. Gill noted Patricia was hypoxic, severely hypotensive, and in respiratory and metabolic acidosis. Gill ordered that Patricia begin receiving a continuous administration of Midazolam. Over the next several hours, Patricia was discontinued from the ventilator several times and bagged to maintain her oxygen. Her condition continued to deteriorate overnight. Her family eventually decided to sign a "Do Not Resuscitate Order" and allow her to pass away, which she did on July 20 at 7:45 a.m.

## II.    Plaintiffs' fourth amended complaint

Plaintiffs' fourth amended complaint is the operative complaint. It alleged five causes of action relating to the medical care and treatment Rohlen and Gill provided. The complaint also alleged Rohlen and Gill were CCMC's "ostensible agents," and thus CCMC was vicariously liable for the doctors' actions.

The first cause of action alleged fraud against Rohlen and CCMC. The theory was that Rohlen fraudulently misrepresented that Patricia's oxygen saturation levels were dangerously low, and that Rohlen fraudulently concealed Patricia's specific oxygen saturation percentages. Plaintiffs allege that Patricia's respiratory condition was not as serious as Rohlen led them to believe, and that Patricia and Peter would not have consented to the intubation had they known Patricia's actual oxygen saturation levels.

The second cause of action alleged battery against Rohlen and CCMC. The battery theory is related to the fraud theory. Plaintiffs allege that Rohlen's fraud vitiated Patricia and Peter's consent to the intubation, and that the intubation procedure was a battery because it was performed without valid consent. Plaintiffs also allege that Patricia and Peter's consent to the intubation was conditioned on Rohlen's performing a

6.

tracheostomy if the intubation failed. They claim the intubation failed, and Rohlen's failure to perform the tracheostomy constitutes battery.

The third cause of action alleged breach of contract against Rohlen only. Drawing on one of the battery theories, plaintiffs allege that the consent form Peter signed on Patricia's behalf for the intubation was a contract, and that the contract provided for a tracheostomy in the event the intubation failed. Rohlen's failure to perform a tracheostomy after the intubation was a breach of the contract.[4]

The fourth cause of action alleged medical battery against Gill and CCMC. Plaintiffs alleged that Gill administered Midazolam to Patricia without obtaining consent from her or her family, which was a battery.

The fifth cause of action was for fraud against Gill and CCMC. Plaintiffs allege that Gill told Peter that Patricia was dead while she was still alive so that Peter would consent to stopping the life-saving care efforts.[5]

## III.   Summary judgment proceedings

Rohlen, Gill, and CCMC separately moved for summary judgment. Rohlen moved for summary judgment on the first and second causes of action, but not on the third cause of action for breach of contract because the trial court had sustained Rohlen's demurrer to that cause of action without leave to amend. Rohlen's motion was supported by, among other items of evidence, Patricia's hospital records and the declaration of Don Mills, M.D., an anesthesiologist and pain management physician.

Mills reviewed Patricia's chart and concluded that intubation was clinically indicated. He noted that Patricia's condition was already terminal by the time Rohlen

---

[4] Rohlen demurred to the second and third causes of action as alleged in the fourth amended complaint, and the trial court sustained the demurrer as to the third cause of action without leave to amend.

[5] Gill demurred to the fourth and fifth causes of action as alleged in the fourth amended complaint, and the trial court sustained the demurrer to the fifth cause of action without leave to amend.

became involved with her care. He stated that the intubation successfully established an airway and therefore a tracheostomy was unnecessary. He also stated that Rohlen's successful intubation likely extended Patricia's life, if only for a short time, and "certainly did not cause or contribute to any injury" or her death.

Plaintiffs filed a joint opposition to Rohlen and Gill's motions, and Rohlen filed a reply. Peter and Don each submitted a declaration in support of their opposition and attached exhibits to Don's declaration. Plaintiffs also filed a request for judicial notice. The trial court sustained Gill's objections to the exhibits for lack of foundation or authentication, and sustained Gill's objection to the request for judicial notice on relevance and authentication grounds.

The court granted the motion in a detailed tentative ruling. On the fraud cause of action, the court ruled, in part, that the unrebutted evidence established that (1) Rohlen did not misrepresent Patricia's oxygen saturation levels, and that (2) Rohlen did not cause Patricia harm. The court ruled specifically that the evidence established that Patricia's oxygen levels were dangerously low, that intubation was necessary, that the intubation was successful, and that the intubation did not cause any harm.

On the battery cause of action, the court ruled, in part, that since the evidence does not support that Rohlen misrepresented Patricia's oxygen saturation levels, plaintiffs' theory that Rohlen's fraud vitiated the consent to the intubation fails as a matter of law. The court also ruled that since the evidence established the intubation was successful, the alleged condition placed on the performance of the intubation—that Rohlen would perform a tracheostomy if it failed—never materialized.

Gill moved for summary judgment on only the fourth cause of action for medical battery, as the court had sustained his demurrer to the fifth cause of action for fraud without leave to amend. Gill's motion was supported by, among other evidence, Patricia's hospital records and the declaration of Ware Kuschner, M.D., who is board certified in internal medicine, pulmonary disease, and critical care medicine. Kuschner

8.

stated, among other things, that "it was not necessary to inform the family that [Midazolam] was being administered." Kuschner also stated that Patricia was in multisystem failure and was terminally ill, and that nothing Gill did, or failed to do, caused or contributed to Patricia's death. The court granted Gill's motion, ruling that plaintiffs failed to rebut Gill's evidence that the administration of Midazolam did not cause Patricia any harm. The court entered judgments for both Rohlen and Gill, from which plaintiffs appealed.

Separately, CCMC moved for summary judgment on all causes of action alleged against it. The court granted the motion on multiple grounds, including that all claims against CCMC were barred by the one-year limitations period under Code of Civil Procedure section 340.5.[6] The court entered judgment for CCMC, from which plaintiffs separately appealed.

## DISCUSSION

### I.     Law on summary judgment and standard of review

The standards for reviewing summary judgments are well established. "Summary judgment is appropriate only if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. [Citation.] ... A defendant moving for summary judgment ... must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. [Citation.] The defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to support an element of the cause of action. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to set forth 'specific facts' showing that a triable issue of material fact exists. [Citation.] [¶] We review the

---

[6] Like Rohlen and Gill, CCMC also demurred to the fourth amended complaint. The court's ruling on the doctors' demurrers also applied to CCMC.

9.

trial court's ruling de novo[.]  [Citation.]  We will affirm an order granting summary judgment ... if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons."  (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 119—120.)  We examine the evidence submitted in connection with the summary judgment motion, except for evidence to which objections have been appropriately sustained.  (Code Civ. Proc., § 437c, subd. (c); *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 711.)

Though our review is de novo, " '[p]erhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error.'  [Citation.]  ' "We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error—it will not be presumed." ' "  (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549 (*Sullivan*); see *People v. Chubbuck* (2019) 43 Cal.App.5th 1, 12.)  Thus, although we independently consider whether summary judgment was properly granted, " ' "it is the appellant's responsibility to affirmatively demonstrate error," ' and 'review is limited to issues adequately raised and supported in the appellant's brief.' " (*Vasquez v. Department of Pesticide Regulation* (2021) 68 Cal.App.5th 672, 685; see also *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708 [burden is on appellant to establish error, even on de novo review].)  Failure to demonstrate error—that is, to support any claim of error with reasoned argument, analysis, and citation to pertinent legal authorities—forfeits the issue on appeal.  (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 [failure to present "reasoned argument and analysis" forfeits issue on appeal]; *People v. Sorden* (2021) 65 Cal.App.5th 582, 603 ["failure to present reasoned argument and legal authorities in support" of a claim of error forfeits issue on appeal].)

Moreover, the pleadings play a key role in a summary judgment motion. " 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues' " and to frame "the outer measure of materiality in a summary judgment proceeding." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381.) As our Supreme Court has explained it: "The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 (*Conroy*).) "Accordingly, the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493; see *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444 (*Jacobs*) [" '[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings,' and '[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings' "]; see *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 182 ["We do not require [defendant] to negate elements of causes of action plaintiffs never pleaded."].)

Furthermore, " ' " '[t]he [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings.' " ' " (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 333.) An opposing party's separate statement is not a substitute for amendment of the complaint. (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1201, fn. 5.) Similarly, " ' "[d]eclarations in opposition to a motion for summary judgment 'are no substitute for amended pleadings.' ... If the motion for summary judgment presents evidence sufficient to disprove the plaintiff's claims, ... the plaintiff

11.

forfeits an opportunity to amend to state new claims by failing to request it." ' " (*Conroy, supra,* 45 Cal.4th at p. 1254.)

## II.     Issues regarding Rohlen's judgment

### A.     Breach of contract cause of action

The trial court sustained Rohlen's demurrer to plaintiffs' third cause of action for breach of contract without leave to amend. In the introduction of their opening brief, plaintiffs state they will address that demurrer ruling. The introduction also states that plaintiffs "submit an alternative theory for the breach of contract action against Dr. Rohlen[.]" Despite that, the breach of contract cause of action is not even mentioned after the introduction. Therefore, any argument about the breach of contract claim is forfeited. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 (*Tellez*) ["[w]hen an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited"].)

### B.     Fraud cause of action

Plaintiffs contend the court erred in granting summary judgment for Rohlen on the first cause of action for fraud. We disagree.

" ' "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.)

The fourth amended complaint's theory of Rohlen's fraud was that Rohlen (1) falsely represented that Patricia's oxygen saturation levels were "dangerously low" and that she needed to be intubated, when in fact Patricia's oxygen saturation levels were "not that low," and (2) fraudulently failed to disclose Patricia's specific oxygen saturation numbers. Plaintiffs alleged that Patricia and Peter would not have consented to the

12.

intubation had they known the specific saturation levels. The intubation harmed Patricia by restricting her ability to breathe which ultimately caused her death.

Thus, plaintiffs' theory contains both a false representation (that Patricia's oxygen levels were low) and a concealment (failure to disclose Patricia's specific oxygen levels). As relevant to both, the trial court ruled that Rohlen's unrebutted evidence established that the intubation did not cause or contribute to Patricia's death. In other words, the court ruled Rohlen caused Patricia no harm.

Plaintiffs have not shown that the trial court's ruling on the element of harm was erroneous. They assert in their opening brief, without citing to any evidence in the record or to any law, that "[t]he injury is the intubation itself" and that Patricia would not have agreed to the intubation had she known her specific oxygen saturation numbers. The lack of factual or legal support for this contention is significant because we cannot reverse a summary judgment based on unsupported factual and legal assertions. (*Tellez, supra,* 240 Cal.App.4th at p. 1066.) Plaintiffs have not established reversible error related to the first cause of action for fraud.

Plaintiffs asserted a second, unpleaded theory of fraud in their opposition to Rohlen's motion for summary judgment, which they reproduce in their opening brief. The unpleaded theory is that Rohlen failed to disclose to Patricia and Peter the high-probability of death from the intubation. They assert that Patricia would not have consented to being intubated had she known of this risk. As we have said, a grant of summary judgment cannot be reversed based on an unpleaded theory of liability. (*Jacobs, supra,* 14 Cal.App.5th at p. 444.) This second theory of fraud cannot be construed from the allegations in the fourth amended complaint, and plaintiffs do not contend otherwise. In fact, plaintiffs admit that "[i]n their complaint, the[y] … did not bring up the fact that Dr Rohlen did not disclose the risk of death, what he saw as the inevitable outcome." This unpleaded theory of fraud cannot be used to reverse the judgment.

13.

## C. Battery cause of action

Plaintiffs' fourth amended complaint alleged a battery cause of action against Rohlen based on two theories: (1) Rohlen's fraudulent conduct, as pleaded in the first cause of action for fraud, vitiated Patricia's consent to the intubation, and thus the intubation constituted a battery because it was performed without valid consent; and (2) Patricia and Peter consented to the intubation with the condition that Rohlen would perform a tracheotomy if the intubation failed, and since the intubation failed, Rohlen committed battery by not performing the tracheotomy. The court ruled that both these theories failed as a matter of law and granted summary judgment on the second cause of action for battery.

Plaintiffs on appeal do not challenge the court's ruling on these two theories. Instead, they try to advance a new, unpleaded theory of battery. They allege that Rohlen's failure to disclose the high probability of death resulting from the intubation is not just fraud, but battery as well. Again, an unpleaded theory cannot be used to reverse a summary judgment motion. (*Jacobs, supra,* 14 Cal.App.5th at p. 444.)

## III. Issues regarding Gill's judgment

### A. Battery cause of action against Gill

Plaintiffs challenge the trial court's ruling on the fourth cause of action for battery against Gill. The court ruled the claim failed as a matter of law because the unrebutted evidence, supplied by Dr. Kuschner's declaration, established that the administration of Midazolam did not harm Patricia. The court cited CACI No. 530A, the pattern instruction for medical battery, to support that harm is an essential element to a medical battery claim. CACI No. 530A expressly lists harm to the plaintiff as an essential element to a claim of medical battery. Plaintiffs' argument implies that harm is not an element of a medical battery cause of action. Their brief contains only one line about that: "Lack of consent and a 'mere touching' constitutes battery. (*Cobbs v. Grant, supra,* 8 C.3d 229, 240.)"

14.

Plaintiffs' citation to *Cobbs v. Grant* (1972) 8 Cal.3d 229 does not support their contention that harm is not an essential element of medical battery. The full sentence from the *Cobbs* opinion (that plaintiffs paraphrase) reads: "However, expert opinion as to community standard is not required in a battery count, in which the patient must merely prove failure to give informed consent and a mere touching absent consent." (*Id.* at p. 240.) Read in context, this quote does not stand for what plaintiffs claim it does. At that place in the *Cobbs* opinion, the California Supreme Court was addressing whether a doctor's failure to obtain informed consent before performing a medical procedure on a patient should be pleaded in negligence or battery. The Court observed that if the claim is brought under a negligence theory, a doctor can defend himself or herself by proving that the disclosure he or she "omitted to make was not required within his [or her] medical community. However, expert opinion as to community standard is not required in a battery count, in which the patient must merely prove failure to give informed consent and a mere touching absent consent." (*Id.* at p. 240.) This portion of the *Cobbs* opinion means that "failure to give informed consent and a mere touching absent consent" are elements of a medical battery claim, and that these elements are proven without reference to community standards. The *Cobbs* Court was not delineating the only elements of a medical battery claim, as plaintiffs would have us believe.

Thus, the one authority plaintiffs cite for their proposition that harm is not an essential element of a medical battery does not support their position. Plaintiffs have not carried their burden of showing the trial court erred in granting Gill's motion on the fourth cause of action for battery. (*Sullivan, supra,* 151 Cal.App.4th at p. 549.)

**B.     Fraud cause of action against Gill**

In the introduction of their opening brief, plaintiffs contend the trial court abused its discretion by granting Gill's demurrer on the fraud cause of action without leave to amend. The Discussion section of their brief regarding that cause of action reads:

"3. Amendment to fraud action against Dr Gill.

"If complaint can be amended, it is an abuse of discretion not to allow it. (*Schifando v. City of Los Angeles* (2003) 31 Cal.App.4th 1074, 1081.)"

Plaintiffs do not even attempt to explain either (1) how the trial court erred in sustaining the demurrer as to that cause of action, or (2) how the cause of action could have been amended. Plaintiffs have thus failed to carry their burden to show error on this issue. In light of this conclusion, we need not address Gill's argument that plaintiffs forfeited their right to appeal the trial court's ruling sustaining the demurrer as to the fraud cause of action.

## IV. Issues regarding CCMC's judgment

The court granted summary judgment for CCMC on all causes of action alleged against it, including on the ground that all causes of action were barred by the one-year limitations period under Code of Civil Procedure section 340.5. Plaintiffs do not challenge the statute of limitations ruling in their opening brief, to their detriment. Their opening brief pertaining to CCMC's judgment begins: "This brief addresses the ostensible agency of two physicians in a hospital." Consistent with this opening line, plaintiffs' brief only addresses the issue of ostensible agency; it does not even mention the statute of limitations ground. Later in the introduction of the opening brief, plaintiffs state: "If this court reverses the summary judgments for Drs. Rohlen and Gill, ostensible agency is once again an issue, and the court should also reverse the summary judgment for Clovis hospital." This means the judgment entered in favor of CCMC can be reversed only if the judgment entered in favor of Rohlen and Gill is reversed.

Since plaintiffs do not challenge the trial court's ruling that the statute of limitations barred all claims asserted against CCMC, plaintiffs have failed to carry their burden to show error. We affirm the judgment on that ground. And aside from that ground, since we are not reversing Rohlen and Gill's judgments, the necessary condition plaintiffs place on reversing CCMC's judgment has not been satisfied.

16.

## DISPOSITION

The judgments are affirmed.  Respondents are awarded their costs on appeal.

SNAUFFER, J.

WE CONCUR:

PEÑA, ACTING P. J.

MEEHAN, J.

17.