Filed 7/25/17 Certified for Publication 8/14/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JACQUES JACOBS, et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY,<br><br>    Defendant and Respondent. | 2d Civil No. B277832<br>(Super. Ct. No. 56-2015-00463977-CU-PO-VTA)<br>(Ventura County) |

Defendant Coldwell Banker Residential Brokerage Company (Coldwell) marketed for sale a vacant, bank-owned property located in Simi Valley. The property had a backyard with an empty swimming pool and diving board. While plaintiffs Jacques Jacobs (Jacques) and his wife, Xenia Jacobs (Xenia),[1] were viewing the property as potential buyers, Jacques stepped

---

[1] Plaintiffs are referred to by their first names to avoid confusion. No disrespect is intended.

1

onto the diving board to look over the fence. The diving board base collapsed and Jacques fell into the empty pool. Plaintiffs sued Coldwell for negligence and loss of consortium.

The trial court granted Coldwell's motion for summary judgment. It determined that Coldwell was entitled to judgment on plaintiffs' claim regarding the negligent condition of the diving board. In opposition to the motion, plaintiffs argued that they also were claiming that the empty pool was a dangerous condition. The court rejected this unpled, undisclosed theory of liability. It also concluded that even if the theory had been pled, Coldwell could not be held liable for failing to remedy the dangerous condition of the empty pool because Jacques's accident was not reasonably foreseeable. We affirm for the same reasons.

FACTS AND PROCEDURAL HISTORY

Before listing the subject property for sale, Dianne Garnett, a licensed real estate agent, visually inspected the property. After examining each room in the house, Garnett spent 20 to 30 minutes inspecting the backyard, including the diving board. She did not observe any breaks, cracks or other visible damage in the diving board. The only dangerous condition she observed was the empty swimming pool.

Garnett retained Clearflo Pools (Clearflo) to inspect the swimming pool and related equipment and to provide her with a report detailing any necessary repairs. Clearflo's post-inspection report did not identify any concerns about the diving board.

Before the property was viewed by any potential buyers, Garnett prepared an MLS listing for the property. The listing stated: "[P]lease use CAUTION around the empty pool."

2

Jacques was interested in purchasing the property as an investment. On August 30, 2014, he and Xenia met their real estate agent to view the property. After looking around the house, they all went outside and walked up to a five-foot-tall wrought iron fence which enclosed the swimming pool area. The agent unlatched the gate, and they entered the pool area.

Jacques, a licensed contractor who regularly performs tile work in and around swimming pools, noticed that the backyard swimming pool was empty. Jacques knew he should stay away from the edge of the empty pool because "it would hurt if [he] fell in."

Jacques wanted to see over the fence to assess whether someone from the adjacent road could jump over the fence into the backyard. To get a better view, he stood on the base of the diving board. After standing on the diving board for 10 to 30 seconds, Jacques felt the board break loose from its base. The board slid forward and Jacques fell into the empty swimming pool, sustaining serious injuries.

Jacques sued Coldwell and the bank that owned the property for negligence; Xenia sued for loss of consortium. The complaint alleged that defendants "negligently, carelessly, recklessly, unlawfully and with gross negligence managed, owned, operated, leased, possessed, secured, maintained and controlled said property, and were otherwise negligent and reckless and conducted themselves in a negligent manner, thereby directly and legally causing the injuries and damages to the Plaintiff [Jacques] as enumerated herein. Among other things, Defendants, and each of them, failed to take measures to make the area where Plaintiff fell reasonably safe, repair the diving board and all accompanying attachments, protect Plaintiff

3

from the diving board, remove the diving board, and failed to warn Plaintiff that the diving board and all accompanying attachments were in poor condition."

Coldwell moved for summary judgment on the grounds that (1) there was no evidence it had breached its duty of care to a prospective purchaser, (2) there was no evidence Coldwell had actual or constructive notice of the allegedly dangerous condition of the diving board, (3) there was no evidence that Coldwell caused Jacques's injuries; and (4) Xenia's claim for loss of consortium was derivative of the negligence claim, which lacked merit.

Regarding the second ground, Coldwell noted that plaintiffs' discovery responses provided no facts demonstrating actual or constructive notice of any defect in the diving board. Coldwell pointed to the undisputed evidence that its agent had seen no defects when she inspected the diving board, and that Clearflo had identified no concerns with the diving board when making its inspection. Coldwell also cited Jacques's own testimony that he looked at the diving board and thought it was in better condition than his own diving board.

Plaintiffs' opposition to the motion did not dispute that Coldwell had no notice of any defect in the diving board. Plaintiffs argued instead that Coldwell's motion had not addressed their "allegations that the empty swimming pool was a dangerous condition."

In reply, Coldwell asserted that plaintiffs could not defeat their motion based on a theory of liability that was not alleged in the complaint or disclosed during discovery. It further argued that safety measures were in place and that there was no evidence that Coldwell possessed any greater knowledge than

4

Jacques regarding the danger presented by the empty pool. Coldwell attached to its reply additional exhibits responding to plaintiffs' empty pool theory. Plaintiffs did not object to the additional evidence.

Following a hearing, the trial court granted summary judgment in Coldwell's favor. It determined the evidence was undisputed that Coldwell had no actual or constructive notice that the diving board was defective. Regarding the empty pool theory of liability, the court concluded that plaintiffs had not alleged that theory, either in their complaint or in their discovery responses, and that the circumstances justified Coldwell's submission of reply evidence addressing that theory. Based on all the evidence, the court ruled that Coldwell was entitled to summary judgment on Jacques's negligence claim, as well as on Xenia's derivative loss of consortium claim. Plaintiffs appeal.

DISCUSSION

*Standard of Review*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The defendant bears the initial burden of showing that the plaintiff cannot establish one or more elements of the cause of action, or that there is an affirmative defense to it. (§ 437c, subd. (o); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the defendant makes one of the required showings, the burden shifts to the plaintiff to establish a triable issue of material fact. (*Aguilar*, at p. 850.)

Our review is de novo. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84.) We liberally construe the opposing

5

party's evidence and resolve all doubts in favor of the opposing party. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.) We consider all evidence in the moving and opposition papers, except that to which objections were properly sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

*Plaintiffs Failed to Plead the Empty Pool*
*Theory of Liability in Their Complaint*

Plaintiffs contend the trial court erroneously determined that their complaint failed to plead their empty pool theory of liability and, as a result, they were barred from defeating summary judgment based on that theory. We agree with the court that this unpled theory of liability was not properly before it on summary judgment.

The pleadings play a key role in a summary judgment motion and """set the boundaries of the issues to be resolved at summary judgment.""" (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 289.) "[T]he scope of the issues to be properly addressed in [a] summary judgment motion" is generally "limited to the claims framed by the pleadings. [Citation.] A moving party seeking summary judgment or adjudication is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion. [Citation.]" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 421; see *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the

6

pleadings," and "[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings"].)

Here, a fair reading of the complaint's allegations does not suggest a negligence claim based on the condition of the empty pool as opposed to the condition of the diving board. A defendant (or a court) reading the complaint would not reasonably anticipate such a claim and, therefore, would not have understood that a motion for summary judgment would need to address the claim. The allegedly defective condition of the diving board is the only theory stated in the complaint. There are additional general allegations of negligence with respect to the failure to maintain and control the property, but the only specific mention of negligence relates to Coldwell's alleged "fail[ure] to take measures to make the area where Plaintiff fell reasonably safe, repair the diving board and all accompanying attachments, protect Plaintiff from the diving board, remove the diving board, and fail[ure] to warn Plaintiff that the diving board and all accompanying attachments were in poor condition." The complaint did not mention the pool except to state that "Plaintiff . . . was lawfully and foreseeably on an outdoor diving board on said premises when the attachments connecting the diving board to the ground broke off causing the board, and Plaintiff, to fall into a nearby empty pool." There is no mention, suggestion, or any facts alleged that would put a reasonable defendant on notice that plaintiffs were claiming that Coldwell was negligent with respect to the empty pool. Thus, Coldwell's motion for summary judgment did not need to address that claim. (See *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 499 ["[d]efendant . . . met its burden as the moving party when it

7

negated the sole basis of plaintiff's claims," and "[i]t was not incumbent on defendant to refute liability on some theoretical possibilities not included in the pleadings"].)

Moreover, plaintiffs did not seek to amend their complaint to allege that their negligence cause of action was based on a claim relating to the empty pool. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1186 ["'[i]f the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion'"]; *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663-1664 ["[i]f either party wishes the trial court to consider a previously unpleaded issue in connection with a motion for summary judgment, it may request leave to amend"].) Plaintiffs could have sought to amend their complaint, and their failure to do so precluded them from defeating Coldwell's motion for summary judgment based on their new theory. (See *Howard v. Omni Hotels Management Corp.*, *supra*, 203 Cal.App.4th at p. 420 ["[i]t is not appropriate, at the time [of filing the opposition], to raise new legal theories or claims not yet pleaded, if there has been no request for leave to amend accordingly, prior to the summary judgment proceedings"].)

Finally, if plaintiffs' complaint left any doubt that their claims were based on the allegedly defective diving board, and not on the condition of the empty pool, their interrogatory responses removed that doubt. (See *Burke v. Superior Court* (1969) 71 Cal.2d 276, 281 [interrogatories "used to clarify the contentions of the parties . . . are an adjunct to the pleadings" and should be used liberally "for the purpose of clarifying and

8

narrowing the issues made by the pleadings"].)  Plaintiffs' responses to Coldwell's contention interrogatories make no mention of the empty pool theory of liability.  For example, in response to an interrogatory requesting that plaintiffs "state each and every fact that supports YOUR first cause of action for general negligence as against [Coldwell]," plaintiffs responded: "Defendants owned, managed, and/or otherwise controlled the subject premises.  At the time of the incident there were no visible signs warning of the diving board.  Jacques was unaware that by just standing on the diving board it could break off from the raised platform and slide down into the swimming pool.  Defendants failed to protect Jacques from the diving board.  Moreover, defendants failed to take adequate measures to inspect, maintain, and/or repair it.  Accordingly, the diving board constituted a hidden trap which resulted in plaintiff's severe injuries."

In sum, the trial court correctly ruled that "Plaintiffs cannot rely on their unpled, undisclosed, . . . theory that Coldwell is liable for failing to remedy, warn, or otherwise protect Jacques from the dangerous condition of the empty pool.  Accordingly, Plaintiffs are limited to the theory that Coldwell is liable for failing to correct, warn of, or otherwise protect Jacques from the dangerous condition of the diving board."  Given that plaintiffs do not challenge the court's determination that summary judgment was warranted on the diving board theory of liability, we conclude the judgment must be upheld.

*Even if the Empty Pool Theory was Properly Pled, It is Insufficient to Defeat Summary Judgment*[2]

Plaintiffs contend that the trial court erred by holding, as a matter of law, that Coldwell is not liable for failing to remedy, warn or otherwise protect Jacques from the dangerous condition of the empty pool. Coldwell responds that the court properly determined that Coldwell had no duty to protect Jacques from the open and obvious danger of the empty pool because there was no foreseeable practical necessity requiring Jacques to encounter the danger. We agree with Coldwell.

To establish negligence, a plaintiff must prove duty, breach of duty, causation and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.) Whether a duty should be imposed on a defendant depends on a variety of policy considerations, known as the *Rowland* factors. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113 (*Rowland*).) These factors include, inter alia, the foreseeability of harm to the plaintiff, the burden to the defendant and the consequences to the community of imposing the duty. (*Ibid.*; *Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104, 121-122 (*Osborn*) ["Duty . . . depends on various policy considerations, the most important of which is the foreseeability of injury to another"].) "The court's task in determining whether a duty exists 'is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue

_____

[2] Although the trial court concluded that plaintiffs could not rely on their unpled empty pool theory of liability, it nonetheless reached the issue of whether a triable issue of material fact exists regarding that theory. We elect to reach this issue as well.

10

is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' [Citation.]" (*Elsheref v. Applied Materials, Inc.* (2014) 223 Cal.App.4th 451, 459-460, italics omitted.) "Foreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 678, superseded by statute on other grounds as stated in *Saelzer v. Advanced Group 400* (2001) 25 Cal.4th 763, 767-768; accord, *Ericson v. Federal Express Corp.* (2008) 162 Cal.App.4th 1291, 1300.)

Foreseeability of harm is typically absent when a dangerous condition is open and obvious. (*Osborn*, *supra*, 224 Cal.App.3d 104 at pp. 114-121.) "Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition." (*Krongos v. Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 393.) In that situation, owners and possessors of land are entitled to assume others will "perceive the obvious" and take action to avoid the dangerous condition. (*Haberlin v. Peninsula Celebration Assn.* (1957) 156 Cal.App.2d 404, 408.)

An exception to this general rule exists when "it is foreseeable that the danger may cause injury despite the fact that it is obvious (e.g., when necessity requires persons to encounter it)." (*Osborn*, *supra*, 224 Cal.App.3d at p. 122, italics omitted.) In other words, while the obviousness of the condition and its dangerousness may obviate the landowner's duty to remedy or warn of the condition in some situations, such obviousness will not negate a duty of care when it is foreseeable that, because of necessity or other circumstances, a person may

11

choose to encounter the condition. In *Osborn*, for example, a trucker was injured when he fell walking over a demolished concrete ramp, which was the only means of reaching a silo for delivery of materials. (*Id.* at pp. 109-110.) In finding a disputed factual issue as to premises liability, the court noted that the worker's "employment required him to pass across this area in order to complete his work." (*Id.* at p. 123; see *Florez v. Groom Development Co.* (1959) 53 Cal.2d 347, 358-359 [foreseeable that plaintiff would attempt to walk across a narrow plank because his job duties required him to access a faucet and "[t]he dangerous plank was the only means furnished to reach that faucet"].)

Plaintiffs do not challenge the trial court's conclusion that "[t]he dangers of the empty swimming pool were *per se* obvious to any adult." Indeed, Jacques admitted during his deposition that he was fully aware of the danger. The issue is whether there is any evidence from which a trier of fact could find that, as a practical necessity, Jacques was foreseeably required to expose himself to the danger of falling into the empty pool. The record does not disclose any such evidence.

This case is distinguishable from *Martinez v. Chippewa Enterprises, Inc.* (2004) 121 Cal.App.4th 1179, in which the court determined there was a practical necessity for the plaintiff to walk across wet pavement because the pavement was the "principal if not sole access way from the street to defendant's building, which housed a government office serving the public." (*Id.* at p. 1185.) Here, potential buyers did not have to approach the dangerous condition (i.e., the empty pool) in order to inspect the backyard. They could easily avoid the edge of the empty pool as they viewed the property. Moreover, there is nothing in the

12

record suggesting that Jacques was under a "necessity" to confront the dangerous condition of the empty pool. Although Jacques wished to look over the fence, he was not compelled to do so as part of his inspection. He could have abandoned that part of his inspection rather than stand on a diving board over an obviously empty pool. Alternatively, he could have found a safer means of assessing whether someone could jump over the fence into the backyard. It was not reasonably foreseeable that he or anyone else would use the diving board for that purpose.

Nor is this case similar to *Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20. The plaintiff in that case slipped and fell while walking in spiked golf shoes across the defendant's veranda, a rough, troweled concrete surface, even though she knew that her footing would not be as stable as it would have been on grass. (*Id.* at pp. 23-24.) The route taken by plaintiff was not the only entrance to the golf club and there were "no imperfections or defects in the concrete walk surface." (*Id.* at p. 24.) Even though the plaintiff knew that golf shoes reduce one's traction, the court found that "in view of the [club's] invitation to use the walkway, she was entitled to consider it reasonably safe" and that "the question of her appreciation of the risk, or her imputed knowledge of it, is not so overwhelming as to properly permit a nonsuit." (*Id.* at p. 34.)

Here, Coldwell did not invite potential buyers to approach the edge of the empty swimming pool as part of their inspection of the property. To the contrary, the MLS listing warned potential buyers to "please use CAUTION around the empty pool." As the trial court aptly observed, "[t]he circumstances presented . . . do not involve facts showing a practical necessity that [Jacques] expose himself to the danger

13

posed by an empty swimming pool, or an invitation from Coldwell that he do so.  Instead of being required to expose himself to the dangers posed by the empty pool by his work duties [or otherwise], the evidence indicates that [Jacques] voluntarily exposed himself to the dangers posed by the empty pool in order to look over a fence."

Accordingly, we agree with the trial court's conclusion that "the undisputed facts indicate that it was not reasonably foreseeable that [Jacques] would expose himself to the risks associated with the empty pool, as he was neither required nor invited to do so.  Simply stated, as a matter of law it was not foreseeable that he would knowingly embrace an entirely obvious risk by voluntarily using the diving board on an empty pool for a purpose for which it was not intended."  Because Jacques's accident was not foreseeable, the court appropriately granted summary judgment on plaintiffs' theory that Coldwell is liable for failing to protect Jacques from the dangerous condition of the empty pool.[3]

### *The Trial Court Did Not Abuse Its Discretion by Considering Coldwell's Reply Evidence*

Coldwell raised new issues and evidence pertaining to the empty swimming pool theory in its reply papers.  Plaintiffs contend the trial court abused its discretion by considering the evidence in ruling on the summary judgment motion.  We disagree.

---

[3] Having concluded that Jacques's accident was not foreseeable, we need not discuss the remaining *Rowland* policy considerations.  (*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 306; see *Rowland, supra,* 69 Cal.2d at pp. 112-113.)

It is well established that the trial court's consideration of additional reply "evidence is not an abuse of discretion so long as the party opposing the motion for summary judgment has notice and an opportunity to respond to the new material." (*Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8, citing *Weiss v. Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1098.)  The record confirms that plaintiffs had notice of the additional material when they received Coldwell's reply papers and ample opportunity to ask the trial court for permission to submit responsive evidence or to file a sur-reply.  By failing to take such action, or to even object to the court's consideration of the evidence, plaintiffs forfeited any claim of a due process violation.  (See *Robbins v. Regents of University of California* (2005) 127 Cal.App.4th 653, 659-660 [party opposing summary judgment forfeited due process claim by failing to move for a continuance for the purpose of conducting further discovery]; *Plenger, supra,* 11 Cal.App.4th at p. 362, fn. 8 [due process claim forfeited where "plaintiffs did not object to the new evidence, did not request a continuance, and did not even suggest that additional evidence could be presented on the issue"]; see also *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1426 ["Absent any objection to the inclusion of new evidence in [moving party's] reply brief, the court was entitled to consider the evidence as within the record before it"].)

Furthermore, the trial court acted within its discretion by allowing Coldwell to provide evidence in response to a new theory of liability raised by plaintiffs in their opposition. As discussed above, although plaintiff's complaint and discovery responses briefly referenced the empty pool, the only theory of liability alleged in the complaint or disclosed during discovery

15

was the purported defective condition of the diving board, not the hazard from the empty pool.  Coldwell was justified, therefore, in replying to the newly raised issue regarding the empty pool.

DISPOSITION

The judgment is affirmed.  Coldwell shall recover its costs on appeal.




PERREN, J.

We concur:


GILBERT, P. J.


TANGEMAN, J.

16

John H. Reid, Kent M. Kellegrew, Mark S. Borrell, Judges

Superior Court County of Ventura

_____

Grassini, Wrinkle & Johnson and Brian Hong, for Plaintiffs and Appellants.

Horvitz & Levy, Lisa Perrochet, Joshua C. McDaniel; Bradley & Gmelich and Thomas P. Gmelich, for Defendant and Respondent.

Filed 8/14/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JACQUES JACOBS et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY,<br><br>    Defendant and Respondent. | 2d Civil No. B277832<br>(Super. Ct. No. 56-2015-00463977-CU-PO-VTA)<br>(Ventura County)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

   The opinion in the above-entitled matter filed on July 25, 2017, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.