Filed 5/12/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ARKADI RAZOUMOVITCH, | B316606 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV12915) |
| v. | |
| 726 HUDSON AVE., LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Audra Mori, Judge. Reversed with directions.

Steven B. Stevens; Jacoby & Meyers Attorneys and Laura F. Sedrish for Plaintiff and Appellant.

Kennedy & Souza and James P. Souza; Haight Brown & Bonesteel and Arezoo Jamshidi for Defendants and Respondents.

# INTRODUCTION

Having accidentally locked himself out of his apartment, and unable to obtain assistance from the managers of the building, Arkadi Razoumovitch went to the roof of the building and attempted to drop down onto the balcony of his top-floor apartment to enter his unit. He was unsuccessful, instead falling to the ground and suffering injuries. Razoumovitch filed this action for negligence and premises liability against 726 Hudson Avenue, LLC, Kohen Investments LLC, Shahab Kohen, and Brianna Camitses (the 726 Hudson defendants), the entities and individuals who owned and managed the apartment building.

The 726 Hudson defendants moved for summary judgment, arguing Razoumovitch could not establish that they owed him a duty of care or that their alleged breaches of that duty caused his injuries. The trial court agreed with them on both issues and granted the motion. We disagree with both conclusions: California law imposes a duty on everyone, including landlords, to exercise reasonable care, and the 726 Hudson defendants have not shown public policy considerations justify departing from that general duty; and causation, as it is in most cases, is a factual issue. Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Razoumovitch Files This Action*

Razoumovitch filed this action against the 726 Hudson defendants for negligence and premises liability, alleging their failure to own and operate his apartment building in a safe condition caused him severe bodily injury. Razoumovitch alleged

2

that, locked out of his apartment one evening, he "used the open access to the roof of the [building] and attempted to enter his apartment by lowering himself from the open roof onto his apartment balcony," in the course of which he fell to a landing several stories below.  He alleged the defendants "were responsible for creating the dangerous condition that caused [his] injuries" and failed to warn him of any dangerous condition.  Specifically, he alleged they had not sufficiently restricted access to the building's roof, had not placed sufficient barriers around the roof's perimeter, and had not placed an alarm or other device on the roof-access door that would have warned them that someone was accessing the roof.

B.    *The 726 Hudson Defendants Move for Summary Judgment*

The 726 Hudson defendants moved for summary judgment or, in the alternative, summary adjudication.  They contended they did not owe Razoumovitch a legal duty of care at the time of the incident because "the manner in which [he] sustained his alleged injuries was highly unforeseeable."  They also contended that, even if they owed him a duty, no alleged breach of that duty proximately caused Razoumovitch's injuries because his injuries resulted solely from his "own knowing, intentional actions."

The 726 Hudson defendants supported their motion with Razoumovitch's deposition testimony.  Razoumovitch explained he and two roommates lived on the top floor of their four-story apartment building, in a unit with a balcony.  On the night of his fall, Razoumovitch and one of his roommates, Gonzalo Pugnaire, returned to the apartment at 1:30 a.m. after having drinks at a bar and discovered they had locked their keys in the apartment.

Their third roommate was either not home or not responding to their attempts to get his attention. After repeatedly trying without success to reach the off-site building manager, Razoumovitch and Pugnaire went to the roof of the building where, attempting to enter their apartment through the balcony, Razoumovitch lowered himself over the edge of the roof, so that he hung from the edge with his feet dangling in the air. After inching his way along (what counsel for the 726 Hudson defendants called) a "roof outcropping" where he hung at an uncertain distance above his balcony, Razoumovitch attempted to drop onto the balcony's thick masonry wall. On landing there, however, he lost his balance and fell. Asked if there was any emergency circumstance requiring him to get into his apartment, Razoumovitch answered, "Well, it was just needing to be home and, you know, have a place to sleep." The 726 Hudson defendants asserted Razoumovitch admitted "there was no emergency or pressing need for him to immediately access his apartment that night . . . ."

The 726 Hudson defendants also submitted the declaration of an architect, David Ball, who stated that, based on his review of the apartment building's plans and construction, "the building appears to comply with all applicable codes with regard [to] the roof of the building, and access to the roof of the building." In addition, the 726 Hudson defendants submitted the declaration of Pauline Eradat, who stated she was employed by 726 Hudson Avenue "to oversee the operation" of the building, was the person most knowledgeable about its management and operation, and would therefore know of "any incidents or complaints regarding the property." She stated that there had been "no complaints of injuries or other incidents stemming from any access to or use of

4

the roof" before Razoumovitch's injury and that she had "no knowledge of or notice that . . . anyone would ever consider[ ] a maneuver similar to what [Razoumovitch] attempted for any reason."

In opposition to the motion, Razoumovitch argued that the 726 Hudson defendants owed him a general duty of ordinary care to which no exception applied and that there were triable issues of material fact regarding whether the defendants failed to use reasonable care in owning and maintaining the apartment building and whether their failures caused Razoumovitch's injury. In response to the 726 Hudson defendants' assertion there was no emergency that required Razoumovitch to get into his apartment, Razoumovitch cited evidence "[t]here was no onsite property manager or a 24-hour emergency number to call for assistance." Razoumovitch supported his opposition with declarations from Brad Avrit, a civil and safety engineer; Stephen Donell, an expert in property management; and Razoumovitch.

Avrit stated his opinion that the 726 Hudson defendants' ownership and management of the apartment building fell below the standard of care in at least two relevant respects. First, Avrit said the defendants "failed to adequately warn, prevent, restrict, and/or control access to the roof." More specifically, Avrit stated that "the roof should have been for emergency egress only, and not for arbitrary and/or unauthorized access by tenants and/or visitors," and that the defendants' "use of an unlocked roof access door and unlocked metal gate alone"—without "any warning signage," alarm, or "other control mechanism"—did not sufficiently prevent or deter unauthorized access to the roof. Second, Avrit stated the height of the roof's parapet was

5

hazardously low and did not comply with applicable building codes.[1]

Donell gave a similar opinion that the 726 Hudson defendants' ownership and management of the apartment building fell below the standard of care. He asserted they did so by "(1) failing to employ an onsite property manager in violation of California law, (2) failing to provide a 24-hour emergency number to the tenants of the property, (3) failing to deter unauthorized roof access, including but not limited to failing to alarm the door to the roof, installing any warning devices whatsoever, (4) failing to install cameras that would capture the stairwell leading to the roof and the roof itself, and (5) failing to have any signage warning residents that roof access was for emergencies only."

Razoumovitch stated that, had his apartment building had an onsite property manager on the night of his injury, he would have contacted that person to let him into his unit and that, had the building had a 24-hour emergency number, he would have called it for assistance. Similarly, he stated that, had "the door to the roof been alarmed," he would not have opened it and that, had there been warning signs "the roof door was alarmed" or "was for use in emergencies and for authorized personnel only," he would not have gone onto the roof.

---

[1] Avrit reported that the parapet ranged from nine to 15½ inches in height and that the applicable building code provision for a roof where access is restricted "to skilled and trained service personnel" or "contractors" required a parapet height of 30 inches. In his opinion, however, because access to the roof was "inadequately restricted" to such persons, the applicable code provision in fact required a 42-inch high guardrail.

6

Razoumovitch also cited Pugnaire's deposition testimony that, after discovering they were locked out of the apartment, Razoumovitch and Pugnaire made numerous unsuccessful attempts, by telephone and text message, to contact Eradat and Camitses. Camitses, the building's property manager, did not live on the premises, but Pugnaire understood she "was the emergency point of contact if you had a problem."

C. *The Trial Court Grants the Motion for Summary Judgment, and Razoumovitch Appeals*

The trial court granted the motion for summary judgment, ruling that Razoumovitch failed "to raise a triable issue of material fact concerning the foreseeability of the incident" and that Razoumovitch's "own conduct was a superseding cause of [his] harm." Razoumovitch filed a notice of appeal from the order granting the motion, after which the trial court entered judgment. Although an order granting a motion for summary judgment is not appealable, and therefore Razoumovitch's notice of appeal was premature, we deem his notice of appeal to have been timely filed from the judgment. (See *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607; *Lat v. Farmers New World Life Ins. Co.* (2018) 29 Cal.App.5th 191, 193; *Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288.)

**DISCUSSION**

A. *Applicable Law and Standard of Review*

"A court may grant a motion for summary judgment "'only when 'all the papers submitted show that there is no triable issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law.""'" (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225; see Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) "A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense." (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1068; see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ."'" (*Fajardo*, at p. 226; see *Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 703.)

"'""'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Fajardo v. Dailey*, *supra*, 85 Cal.App.5th at p. 711; *Sabetian v. Exxon Mobel Corp.*, *supra*, 57 Cal.App.5th at pp. 1068-1069.)

> B. *The Trial Court Erred in Granting the Motion for Summary Judgment*

"To prevail on a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) breach of that duty,

8

(3) proximate cause linking the breach to the plaintiff's injury, and (4) damages resulting from that breach." (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 767-768; see *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).) "The elements of a cause of action for premises liability are the same as those for negligence." (*Kaney v. Custance* (2022) 74 Cal.App.5th 201, 214 (*Kaney*); see *Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1207 ["the plaintiff must prove, "'a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury'"'"].)

In their motion for summary judgment, the 726 Hudson defendants contended Razoumovitch could not establish the first and third elements of his causes of action. Razoumovitch argues the trial court erred in granting the motion for summary judgment because, on the first element, the 726 Hudson defendants did not establish they owed him no duty of care as a matter of law and, on the third element, there were triable issues of material fact regarding whether their alleged breaches of the duty of care proximately caused his injuries. We agree with Razoumovitch that the trial court erred on both grounds.

1.     *The 726 Hudson Defendants Failed To Establish They Did Not Owe a Duty of Care*

The first element, whether there is a duty, "is a question of law to be resolved by the court." (*Brown, supra*, 11 Cal.5th at p. 213.) "The 'general rule' governing duty is set forth in Civil Code section 1714" (*Brown*, at p. 213), which in subdivision (a) provides: "Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ." "This statute

9

establishes the default rule that each person has a duty 'to exercise, in his or her activities, reasonable care for the safety of others.'" (*Brown*, at p. 214; see *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 768, 771 (*Cabral*).  Thus, as a general rule, a "landlord owes a duty of care to a tenant to provide and maintain safe conditions on the leased premises." (*Kaney*, *supra*, 74 Cal.App.5th at p. 214; see *Ramirez v. PK I Plaza 580 SC LP* (2022) 85 Cal.App.5th 252, 261 [under Civil Code section 1714, "'those who own or occupy property have a duty to maintain their premises in a reasonably safe condition'"].)

In *Rowland v. Christian* (1968) 69 Cal.2d 108 the Supreme Court "identified several considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.'" (*Cabral*, *supra*, 51 Cal.4th at p. 771; see *Rowland*, at p. 113.)  These factors "fall into two categories.  Three factors—foreseeability, certainty, and the connection between the plaintiff and the defendant—address the foreseeability of the relevant injury, while the other four—moral blame, preventing future harm, burden, and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from

relief." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1145 (*Kesner*).)

Significantly, courts evaluate the *Rowland* factors "at a relatively broad level of factual generality. Thus, as to foreseeability, . . . the court's task in determining duty 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . .'" (*Cabral*, at p. 772; accord, *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 127; see *Regents, supra,* 4 Cal.5th at p. 629 [in considering the *Rowland* factors, "we determine 'not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy'"].)

The 726 Hudson defendants, suggesting the "question of duty in the landlord-tenant context first requires the court to analyze whether the plaintiff's injuries were foreseeable,"[2] argue

___

[2] For this proposition—and throughout their analysis of the duty element—the 726 Hudson defendants cite *Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269 and other not-so-recent court of appeal decisions. The 726 Hudson defendants rely in particular on an "analytical approach to evaluate the threshold legal question of duty" proposed by the court in *Vasquez* (*id.* at p. 285), which they make no attempt to reconcile with the approach the Supreme Court has set forth in more recent cases. (See *Brown, supra,* 11 Cal.5th at pp. 213-214;

they did not owe Razoumovitch a duty of care because the risk of his being injured by hanging off the edge of the roof to drop onto his balcony was not foreseeable. They also argue that "none of the other *Rowland* factors justify [*sic*] imposing a duty on [the 726 Hudson defendants] to prevent a tenant from intentionally climbing down a building from the roof." For example, regarding the "moral blame" of the defendant's conduct, the 726 Hudson defendants argue "there is nothing morally blameworthy in light of the fact that Razoumovitch knowingly went to the roof, deliberately climbed down the side of the building until he was hanging by his hands and intentionally dropped himself down to the retaining wall of the balcony."

These arguments rest on two fundamental mistakes. First, they do not acknowledge the default rule that, under Civil Code section 1714, the 726 Hudson defendants owed Razoumovitch a duty of care to provide and maintain safe conditions at the apartment building. The proper inquiry begins by assuming there is a duty under that general rule, not by asking, as the 726 Hudson defendants ask, whether Razoumovitch's injuries were foreseeable. (See *Brown*, *supra*, 11 Cal.5th at pp. 217-218 ["inquiry whether a landowner owes a duty to her invitees . . . begins with the 'basic policy' that 'everyone is responsible for an

---

*Kesner*, *supra*, 1 Cal.5th at pp. 1142-1143; *Cabral*, *supra*, 51 Cal.4th at pp. 768, 771-772; see also *T.L. v. City Ambulance of Eureka, Inc.* (2022) 83 Cal.App.5th 864, 875 [the Supreme Court "has, in a number of its more recent opinions, instructed the courts as to the legal lens we must employ in considering the threshold issue of duty"].) We follow the approach currently prescribed by the Supreme Court; to the extent *Vasquez* and other cases cited by the 726 Hudson defendants depart from that approach, we do not follow those cases.

injury caused to another by his want of ordinary care or skill in the management of his property,' and then considers whether more particular considerations of policy call for departure from the basic rule"].) Similarly, the proper analysis does not ask, as the 726 Hudson defendants ask, whether the *Rowland* factors justify "imposing a duty" on the 726 Hudson defendants; the correct question is whether the *Rowland* factors justify *limiting* the duty Civil Code section 1714 imposes on the 726 Hudson defendants (and everyone else). (See *Brown*, at p. 217 ["The multifactor test set forth in *Rowland* was not designed as a freestanding means of establishing duty, but instead as a means for deciding whether to limit a duty derived from other sources."].)

The second fundamental mistake in the 726 Hudson defendants' analysis is that, in arguing that under the *Rowland* factors—especially those relating to the foreseeability of Razoumovitch's injuries—they did not owe him a duty of care, the 726 Hudson defendants wrongly insist on applying those factors to the specific factual circumstances of this case. They complain "Razoumovitch would have this court believe that imposing a duty on a landlord to protect Razoumovitch from the harm he suffered should not be based on the specific facts of the case." That's exactly what Razoumovitch would have this court believe. As would the Supreme Court, which as discussed has repeatedly instructed that "'the *Rowland* factors are evaluated at a relatively broad level of factual generality.'" (*Kesner, supra*, 1 Cal.5th at p. 1143; accord, *Cabral, supra*, 51 Cal.4th at p. 772.) "Thus, in applying the *Rowland* factors, the courts do not ask whether they "'support an exception to the general duty of reasonable care on the facts of the particular case before'" the

13

court, "'but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy.'""" (*T.L. v. City Ambulance of Eureka, Inc.* (2022) 83 Cal.App.5th 864, 876; see *Regents*, *supra*, 4 Cal.5th at p. 629; *Cabral*, at p. 772.)

In sum, under the default rule, the 726 Hudson defendants owed Razoumovitch a duty of care. And because they (mis)apply the *Rowland* factors to the specific facts of this case—focusing, in particular, on the circumstances that led to Razoumovitch's fall from the roof of his apartment building (his decision to hang from its edge, his attempt to drop onto his balcony, etc.)—the 726 Hudson defendants have not established that this case falls into "an entire category of cases" warranting a departure from the general duty rule. The 726 Hudson defendants do not even identify any such "category."

The closest they come is in citing two negligence cases— *Montes v. Young Men's Christian Assn. of Glendale, California* (2022) 81 Cal.App.5th 1134 (*Montes*) and *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438 (*Jacobs*)—where the courts held the landowner defendant did not owe a duty of care because the plaintiff's injury resulted from his voluntarily encountering an obviously dangerous condition on the property. (See *Montes*, at p. 1137 [plaintiff fell from a steeply sloped roof "covered with brittle, broken, slippery and unstable Spanish tiles"]; *Jacobs*, at p. 441 [plaintiff fell into an empty swimming pool when he stepped onto a diving board that broke].) Both cases cite the rule that "'[f]oreseeability of harm is typically absent when a dangerous condition is open and obvious. [Citation.] "Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves

14

as a warning, and the landowner is under no further duty to remedy or warn of the condition." [Citation.] In that situation, owners and possessors of land are entitled to assume others will "perceive the obvious" and take action to avoid the dangerous condition.'" (*Montes*, at p. 1140; see *Jacobs*, at p. 447.) The 726 Hudson defendants argue that, under this rule, they did not owe Razoumovitch a duty because "the dangers from climbing down the building from the roof, hanging by one's hands from the ledge of the roof cropping and purposely dropping oneself onto the retaining wall of the balcony, are obvious."

*Montes* and *Jacobs*, however, do not help the 726 Hudson defendants. Both cases state: "Whether a duty should be imposed on a defendant depends on various public policy considerations known as the *Rowland* factors." (*Montes*, *supra*, 81 Cal.App.5th at p. 1140; *Jacobs*, *supra*, 14 Cal.App.5th at p. 446.) As discussed, that's backward: The law imposes a duty on a defendant to act with reasonable care, and the court considers the *Rowland* factors to determine whether various public policy considerations should limit that duty. (See *Brown*, *supra*, 11 Cal.5th at p. 217; *Regents*, *supra*, 4 Cal.5th at p. 628; *Kesner*, *supra*, 1 Cal.5th at p. 1143; *Cabral*, *supra*, 51 Cal.4th at pp. 768, 771.) Moreover, putting aside any arguably obvious danger in accessing (and hanging from) the roof of the apartment building, among the property conditions Razoumovitch contends the 726 Hudson defendants had (and breached) a duty to remedy or warn him of were the absence of an onsite property manager and the lack of a 24-hour emergency telephone number for

15

tenants.  The 726 Hudson defendants do not attempt to explain how those conditions were obviously dangerous.[3]

Moreover, while as a general rule a landowner does not have a duty to remedy or warn of an obviously dangerous condition on its property, "'this is not true in all cases.  "[I]t is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger."'" (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 673.)  "'In other words, while the obviousness of the condition and its dangerousness may obviate the landowner's duty to remedy or

---

[3]  The 726 defendants do not argue (nor did they argue in the trial court) that, because Razoumovitch did not allege in his complaint the 726 Hudson defendants breached their duty of care by failing to have an on-site manager or a 24-hour emergency number, Razoumovitch's argument in opposition to the motion for summary judgment went beyond the allegations of the complaint. (See *White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 354 ["'the burden of a defendant moving for summary judgment only requires that he or she negate the theories of liability as alleged in the complaint; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings'"]; see also *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 585 ["[i]n assessing whether the issues raised by plaintiff in opposing summary judgment are encompassed by the controlling pleading, we generally construe the pleading broadly"].)  Instead, they argue that, "[e]ven assuming that Defendants had such duties, which they did not, it was not foreseeable that a breach of any of these alleged duties would result in a tenant intentionally climbing down the building from the roof."

16

warn of the condition in some situations, such obviousness will not negate a duty of care when it is foreseeable that, because of necessity or other circumstances, a person may choose to encounter the condition.'" (*Kaney*, *supra*, 74 Cal.App.5th at p. 215; see *Jacobs*, *supra*, 14 Cal.App.5th at p. 447.)

Razoumovitch asserts that under the circumstances—including that he was unable to seek assistance from an on-site property manager or call a 24-hour emergency number—the practical necessity of entering his locked apartment made it foreseeable he might try to access his apartment through the balcony from the roof of the building, despite any obvious risk involved, to get into his home at night. He points out that the 726 Hudson defendants have yet to suggest what he should have done instead. The 726 Hudson defendants, for their part, do not address this exception to the general rule that a landowner has no duty to remedy or warn of an obvious danger. Thus, even under this theory, the 726 Hudson defendants failed to demonstrate they did not owe Razoumovitch a duty as a matter of law. (See *Kaney*, *supra*, 74 Cal.App.5th at p. 215 [landowner defendant was not entitled to summary judgment on the element of duty because the defendant did not "wrestle[ ] with the exception" to the general rule for obviously dangerous conditions]; see also *Florez v. Groom Development Co.* (1959) 53 Cal.2d 347, 358-359 [jury is entitled to balance the necessity of the plaintiff's encountering an allegedly dangerous condition against the danger of doing so, even if the danger is apparent].)

17

## 2. *There Were Triable Issues of Material Fact on Causation*

Proximate cause "has two aspects. "'One is *cause in fact*. An act is a cause in fact if it is a necessary antecedent of an event.""" (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 352 (*State Hospitals*); accord, *Shih v. Starbucks Corp.* (2020) 53 Cal.App.5th 1063, 1068 (*Shih*); see *State Hospitals*, at p. 352 ["This is sometimes referred to as 'but-for' causation."].) "The second aspect of proximate cause 'focuses on public policy considerations. Because the purported [factual] causes of an event may be traced back to the dawn of humanity, the law has imposed additional "limitations on liability other than simple causality.""" (*State Hospitals*, at p. 353.) One of those limitations is ""'the degree of connection between the [defendant's] conduct and the injury.""" (*Ibid.*; see *Novak v. Continental Tire North America* (2018) 22 Cal.App.5th 189, 197 [connection between the defendants' conduct and the injury suffered was "too attenuated" to satisfy the element of proximate causation].)

""'Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law . . . . Nevertheless, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact.""" (*Shih*, *supra*, 53 Cal.App.5th at p. 1071; accord, *State Hospitals*, *supra*, 61 Cal.4th at p. 353; see *Huang v. The Bicycle Casino, Inc.* (2016) 4 Cal.App.5th 329, 348 [proximate cause "'is generally a question of fact for the jury'"].)

The 726 Hudson defendants do not appear to dispute there is a triable issue of material fact regarding whether their alleged breaches of the duty of care were a cause in fact of

18

Razoumovitch's injuries.  In any event, Razoumovitch created a triable issue on that question by stating in his declaration that, had the 726 Hudson defendants not breached their duty of care to him—by, for example, not having an on-site property manager or an alarm on the roof-access door—he would not have gone onto the roof on the night of his injury.

Concerning the second aspect of proximate causation, the 726 Hudson defendants argue it was not foreseeable "that a tenant being locked out of his or her apartment would result in the tenant intentionally climbing down the side of a building to access his apartment."  (See *Cabral*, *supra*, 51 Cal.4th at p. 779 ["'the closeness of the connection between the defendant's conduct and the injury suffered' [citation] is strongly related to the question of foreseeability"].)  A jury may well agree (or assign Razoumovitch considerable comparative fault), but the issue cannot be decided as a matter of law on this record.  Given, for example, the evidence regarding the proximity of Razoumovitch's balcony to the edge of the roof and the evidence tending to show at least some degree of practical necessity for entering his apartment through the balcony, causation was a factual issue.

*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136 (*Modisette*), on which the 726 Hudson defendants primarily rely, is not to the contrary.  There, the plaintiffs were injured when a driver using a smart phone with a one-on-one video chatting application crashed into their car on the highway.  (*Id.* at p. 139.)  The plaintiffs sued the technology company that developed the smart phone and the application for negligence and other causes of action, alleging the company's failure to implement an alternative phone design that would have prevented people from using the application while driving caused their injuries.  (*Id.* at

19

pp. 140, 152.) Affirming the trial court's order sustaining the defendant's demurrer to the complaint without leave to amend, the court held the plaintiffs could not establish proximate causation. (*Id.* at p. 155.) But that holding did not rest on a determination the plaintiffs' injuries were an unforeseeable result of the defendant's conduct.[4] Rather, the court concluded "the gap between [the defendant's] design of the [smart phone] and the [plaintiffs'] injuries is too great for the tort system to hold [the defendant] responsible." (*Id.* at p. 155.) The 726 Hudson defendants have not demonstrated any such gap between their alleged breaches of the duty of care and Razoumovitch's injuries.

---

[4] In fact, analyzing the duty element of the negligence causes of action, the court in *Modisette* stated that "*Rowland*'s foreseeability factor weighs in favor of imposing a duty of care on [the defendant] because 'the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced.'" (*Modisette, supra*, 30 Cal.App.5th at p. 144.)

20

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order granting the motion by the 726 Hudson defendants for summary judgment or, in the alternative for summary adjudication, and to enter a new order denying the motion.  Razoumovitch is to recover his costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.