Filed 11/14/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SUSAN NICOLETTI, | B319377 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV42957) |
| v. | |
| GOLDRICH KEST, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Daniel Crowley, Judge.  Affirmed.

Pick & Boydston and Brian D. Boydston for Plaintiff and Appellant.

Clyde & Co US, Alison K. Beanum, Douglas J. Collodel, and Brett C. Safford for Defendant and Respondent.

_____

This is an appeal from a trial court order granting Respondent Dolphin Marina Apartments' (Dolphin) (erroneously sued as Goldrich Kest doing business as Dolphin Marina Apartments) summary judgment motion against Appellant Susan Nicoletti (Nicoletti).  We conclude that Dolphin owed no duty to

warn Nicoletti of a water current that openly and obviously interfered with one of three building entrances.  Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 2020, Nicoletti took her neighbor's dog for a walk around Dolphin's apartment complex located at 13900 Panay Way, Marina Del Rey, California.  Nicoletti observed that it was raining that day with thunderstorms.  At around 3:30 p.m., Nicoletti crossed the driveway of the North Side Gate entrance that led to the underground parking lot.  The apartment complex also had a South Side Gate entrance and another entrance on Panay Way.  Nicoletti was a thirteen-year resident of Dolphin's apartment complex and was familiar with its premises.  Nicoletti testified that she had gone past the North Side Gate "thousands of times" before the incident.

Before crossing, Nicoletti observed that the concrete on the North Side Gate driveway was wet, and rainwater formed a current that was running down the driveway.  Nicoletti did not observe any caution tape or other warning advisements.  Nicoletti proceeded to cross, and the rainwater current knocked her down.  Nicoletti then fell down the North Side Gate driveway and hit the gate at the bottom of the driveway.  Nicoletti sustained injuries to her right shoulder, left knee, and face.

On November 9, 2020, Nicoletti filed a complaint against Dolphin alleging general negligence and premises liability because Dolphin had a duty to warn of the running rainwater on the driveway with caution tape or other warning signals.

On August 12, 2021, Dolphin filed a motion for summary judgment arguing that because the running rainwater was open and obvious, Dolphin had no duty to warn.  On December 29,

2021, Nicoletti filed her opposition to Dolphin's motion for summary judgment.

The trial court granted Dolphin's motion for summary judgment. The trial court reasoned that Dolphin did not have a duty to warn of the running rainwater on the driveway because it was a dangerous condition that was sufficiently obvious. The trial court concluded that "[a] reasonably careful person would know that the running water on the driveway was dangerous and thus, the undisputed facts show that she was aware of an open and obvious condition for which the Defendant had no duty of care about which to warn her."

## DISCUSSION

### I.    Standard of review

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*)

When the moving party is a defendant, it must show that the plaintiff cannot establish at least one element of the cause of action. (*Aguilar, supra*, 25 Cal.4th at p. 853.) "[T]he defendant *must* 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.'

3

(Code Civ. Proc., § 437c, subd. (b).) The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Aguilar*, at p. 855.)

On appeal from a summary judgment ruling, we review the record de novo to determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Id.* at p. 768.)

"In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.*) Thus, a reviewing court "will affirm a summary judgment if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1402.)

II. **The trial court correctly granted summary judgment on Nicoletti's negligence and premises liability claims**

a. **The rainwater current on the driveway was open and obvious**

Nicoletti argues that the dangerous condition caused by the lateral force of rainwater was not open and obvious. As such, Dolphin had a duty to warn of the dangerous condition. We disagree.

A landowner must " 'maintain land in [its] possession and control in a reasonably safe condition.' " (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156.) But an accident on a landowner's property does not necessarily create premises liability. (*Edwards v. California Sports, Inc.* (1988) 206 Cal.App.3d 1284, 1287.)

" 'The elements of a cause of action for premises liability are the same as those for negligence.' " (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1207.) The plaintiff must prove duty, breach of duty, causation, and damages. (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 446 (*Jacobs*).)

"Whether a duty should be imposed on a defendant [in a premises liability action] depends on a variety of policy considerations, known as the *Rowland* factors." (*Jacobs*, *supra*, 14 Cal.App.5th at p. 446; *Rowland v. Christian* (1968) 69 Cal.2d 108, 112–113.) The "most important" of these considerations or factors is "the foreseeability of injury to another." (*Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104, 122; *Krongos v. Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 394.) A "court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of

5

a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572, fn. 6; *Jacobs, supra,* 14 Cal.App.5th at p. 446.) " 'Foreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court.' " (*Jacobs,* at p. 446.)

A harm is typically not foreseeable if the "dangerous condition is open and obvious." (*Jacobs, supra,* 14 Cal.App.5th at p. 447.) " 'Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition.' [Citation.] In that situation, owners and possessors of land are entitled to assume others will 'perceive the obvious' and take action to avoid the dangerous condition." (*Ibid.*)

In *Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461 (*Sanchez*), our colleagues in Division One held that "the presence of standing water and the manner in which it drained into or toward the transportation office would have been obvious and apparent to any reasonably observant person, as would the danger that the water might create slippery surfaces and cause one to slip and fall." (*Id.* at p. 1470.) As such, the property owner had no duty to warn of the dangerous condition. (*Ibid.*)

Nicoletti contends that although she was aware that it was raining and the ground on the driveway to the North Side Gate was wet with rainwater, she did not know that the current of rainwater posed a danger to her safety. Nicoletti does not

6

dispute that she observed that there was water running down the driveway. Nicoletti instead attempts to distinguish *Sanchez* because in that case, the water was standing. (See *Sanchez*, *supra*, 47 Cal.App.4th at p. 1470.) However, running water on a surface is arguably a more obvious danger than standing water. Not only does the water current make the surface slippery, but also a reasonable person would observe that running water could create a force that would cause someone to fall over. Further, "[i]t is a matter of common knowledge among children and adults that wet concrete is slippery and that, when on a slanting incline" such as a driveway, "it does not provide a safe footing." (*Betts v. City and County of San Francisco* (1952) 108 Cal.App.2d 701, 703.) Accordingly, the dangerous condition was open and obvious to Nicoletti, and Dolphin had no duty to warn.

**b. Even assuming Nicoletti did not forfeit the necessity exception to the open and obvious rule, she still cannot prevail on the merits**

Nicoletti further argues for the first time on appeal that necessity required her to cross the North Side Gate driveway. We disagree. Even assuming Nicoletti did not forfeit this argument, we conclude that she was not required to use the North Side Gate entrance and could have used a different entrance to enter the apartment complex.

While as a general rule, a landowner does not have a duty to remedy or warn of an obviously dangerous condition on his or her property, " 'this is not true in all cases. "[I]t is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger." ' " (*Kinsman v.*

7

*Unocal Corp.* (2005) 37 Cal.4th 659, 673.) A landowner's duty of care is not negated " 'when it is foreseeable that, because of necessity or other circumstances, a person may choose to encounter the condition.' " (*Kaney v. Custance* (2022) 74 Cal.App.5th 201, 215 (*Kaney*).)

Nicoletti did not argue this exception to the open and obvious rule to the trial court. Because Nicoletti did not make the argument in the summary judgment proceedings below, the argument is forfeited on appeal. (*Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 672.)

Even assuming the argument is not forfeited, Nicoletti's claim fails on the merits. Nicoletti relies on *Kaney* for her claim that the circumstances here fall under the exception to the open and obvious rule. In *Kaney*, Division Two of our district held that "it is foreseeable that occupants and visitors would, by necessity, use the stairs to access the lone bathroom." (*Kaney*, *supra*, 74 Cal.App.5th at p. 215.) Here, Nicoletti was not required to use the North Side Gate entrance to the apartment complex. Nicoletti fails to rebut Dolphin's evidence showing that the apartment complex had multiple entrances. Relatedly, she proffers no evidence that she was required to use the North Side Gate entrance. In contrast, the plaintiff in *Kaney* could only access the bathroom in the building using the dangerous stairwell. (*Ibid.*) Moreover, even crediting Nicoletti's testimony that she passed by the North Side Gate "thousands of times" does not assist her. Here, Nicoletti's testimony that she commonly used one of the three entrances falls short of establishing a "necessity" to use that entrance when water currents impeded it. (See *ibid.*) Nicoletti's argument that other residents commonly used the North Side Gate entrance is unsupported by the record

and fails for that reason. In addition, as with Nicoletti herself, other residents' common use of an entrance does not point to a "necessity" to use that particular entrance. (See *ibid*.) Accordingly, the undisputed facts indicate that it was not foreseeable that Nicoletti would " 'knowingly embrace an entirely obvious risk' " by choosing to cross the North Side Gate driveway. (*Jacobs*, *supra*, 14 Cal.App.5th at p. 448.)

Our holding is also consistent with our Supreme Court's declaration that courts must assign tort duties "to ensure that those 'best situated' to prevent such injuries are incentivized to do so." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1153 [quoting *Escola v. Coca Cola Bottling Co.* (1944) 24 Cal.2d 453, 462 (conc. opn. of Traynor, J.)].) Under these circumstances, Nicoletti was in a better position to avoid the obvious danger of walking across a current of water that formed as a result of a rainstorm that began that same day. As discussed above, Nicoletti could have chosen to use a different entrance. The burden imposed on Dolphin to constantly monitor weather conditions and immediately install warning signals is outweighed by Nicoletti's ability to avoid a condition she should have observed as obviously dangerous.

Accordingly, the trial court correctly granted Dolphin's motion for summary judgment.

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded costs on appeal.


VIRAMONTES, J.


WE CONCUR:



GRIMES, Acting P. J.



WILEY, J.